IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 31, 2011

## PAUL W. CHAMBERS v. FIRST VOLUNTEER BANK OF TENNESSEE

**Appeal from the Chancery Court for Polk County**
**No. 7431      Jerri Saunders Bryant, Chancellor**

---

**No. E2011-00020-COA-R3-CV-FILED-JULY 29, 2011**

---

This case arises from a dispute over the repayment of a loan. Penny Chambers obtained a loan through a bank in order to buy a house. Penny Chambers defaulted on the loan. Paul W. Chambers ("Chambers"), Penny Chambers's husband, later assumed the mortgage. Chambers allegedly defaulted and First Volunteer Bank of Tennessee ("the Bank")[1] stated that it would foreclose if he did not cure the default. Chambers sued the Bank in the Chancery Court for Polk County ("the Trial Court"). The Trial Court granted the Bank's motion to dismiss. Chambers appeals. We find that the Trial Court did not err in granting the Bank's motion to dismiss. We further find that the Trial Court did not err in denying Chambers's motion to alter or amend and motion for default. The judgment of the Trial Court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

Paul W. Chambers, pro se appellant.

Tracy C. Wooden, Chattanooga, Tennessee, for the appellee, First Volunteer Bank of Tennessee.

---

[1]Penny Chambers took out her loan through Benton Banking Company. During the course of the events of this case, First Volunteer Bank of Tennessee succeeded Benton Banking Company in interest. For convenience, we will refer to these entities collectively as "the Bank."

## OPINION

## Background

In April 2005, Penny Chambers entered into a mortgage with the Bank in order to purchase certain real estate ("the Property") in Benton, Tennessee. Penny Chambers signed a note for the loan. In conjunction with the note, Penny Chambers and Chambers signed a deed of trust pledging their interest in the Property. In April 2006, Penny Chambers refinanced her mortgage. Penny Chambers signed a second deed of trust. Chambers's signature is visible on the second deed of trust but he denies having signed the document. Penny Chambers defaulted on her loan.

In April 2007, the Bank sent Penny Chambers a letter warning of the consequences of default and demanding a response within ten (10) days. Chambers signed for the letter. The Bank sent additional letters warning of default and foreclosure to Penny Chambers over the course of 2007.

Chambers informed the Bank that Penny Chambers had agreed, as part of a marital dissolution agreement, to transfer the Property to him by quitclaim deed. Chambers offered to assume the mortgage. In January 2008, Chambers was added to the loan under the same conditions as were in effect for Penny Chambers. Chambers signed both notes. The terms of the 2006 note required the borrower, Chambers, to maintain insurance on the Property. Chambers did not purchase insurance for the Property. In December 2008, the Bank obtained a one year insurance policy on the Property.

In 2009, the Bank informed Chambers that he was in default of the mortgage. In reply, Chambers proposed a compromise solution. The matter was not resolved. In March 2009, Chambers sued the Bank asking, among other things, that the deed of trust on the property be removed. Chambers sought and the Trial Court granted an order restraining the Bank from foreclosing on the Property until further order of the Trial Court. Chambers was ordered to pay monthly interest payments on the loan.

In April 2009, Chambers filed his motion for default. Subsequently, Chambers removed the hearing on his motion for default from the docket, and the motion never was granted. In June 2009, the Bank filed a motion to dismiss, or, in the alternative, for a more definite statement. After a hearing in August 2009, the Trial Court gave Chambers fifteen (15) days to file a more definite statement of claims. The Trial Court also ordered the Bank to furnish proof of insurance covering the Property and whether any claims had been filed related to certain incidents at the Property. In September 2009, Chambers filed his Plaintiff's

More Definite Statement, raising numerous causes of action. Chambers also alleged damage to the Property stemming from three incidents in March 2008, December 2008, and February 2009. The Property was not insured at the time of the March 2008 damage. Chambers alleged that he had relied on a representation by the Bank that the Property was, in fact, insured in March 2008. The Bank filed a second motion to dismiss.

Chambers served subpoenas duces tecum on an employee of the Bank. The Trial Court quashed the subpoenas for several days leading up to a hearing. In October 2009, the Bank filed its Motion to Inspect Property. At a hearing in December 2009, the Trial Court delayed ruling on the Bank's motion to dismiss and instead ordered the parties to inspect the Property and report back to the Trial Court.

In March 2010, after two inspections of the Property, the parties filed their Joint Inspection Report with the Trial Court. The Joint Inspection Report stated that "[t]he insurance company decided to accept the amount of damages proffered by [Chambers]" and that "[Chambers] hereby represents to the Court that the issues related to the property inspections and insured damage claims have been resolved." The insurance recovery funds did not fully satisfy Chambers's debt on the property.

In August 2010, a hearing was held in the Trial Court. The Trial Court granted the Bank's motion to dismiss. In its September 2010 order, following a summary of the case's history, the Trial Court found and held:

> The Court finds that [the Bank] has filed all appropriate insurance claims consistent with the signature of [Chambers] on the Joint Inspection Report referenced above which provides "[Chambers] hereby represents to the Court that issues related to the property inspections and insured damage claims have been resolved." The Court further finds that [Chambers] has not plead any additional issues in [Chambers's] More Definite Statement for which relief may be granted.
>
> WHEREFOR, based upon the foregoing and for good cause shown, it is hereby
> ORDERED and DECREED that all claims brought by [Chambers] in this cause be, and hereby are, dismissed; it is further
> ORDERED and DECREED that all injunctions issued during the pendency of this case are hereby dissolved; it is further
> ORDERED, ADJUDGED, and DECREED that all costs in this matter be taxed to [Chambers], for which execution may issue, if necessary.

Chambers filed a motion to alter or amend. In December 2010, the Trial Court denied Chambers's motion to alter or amend. Chambers appeals to this Court.

## Discussion

Chambers raises numerous issues which we restate as three issues on appeal: 1) whether the Trial Court erred in denying Chambers's motion for default; 2) whether the Trial Court erred in granting the Bank's motion to dismiss; and 3) whether the Trial Court erred in denying Chambers's motion to alter or amend.

We first address whether the Trial Court erred in denying Chambers's motion for default. The decision to grant a default judgment is reviewed under an abuse of discretion standard. *State of Tennessee ex. rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). In *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515 (Tenn. 2010), the Supreme Court discussed the abuse of discretion standard at length, stating:

The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). Thus, it does not permit reviewing courts to second-guess the court below, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).

Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or

-4-

(3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d at 42.

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness. *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d at 212.

*Beecher*, 312 S.W.3d at 524-25.

The record in this case does not explain the Trial Court's reasoning for not granting the motion for default. However, the record does reveal that Chambers canceled a hearing on his motion for default. Chambers later notified the Bank that a hearing was to be held on his motion for default on June 9, 2009. No transcript or order from a June 9, 2009 hearing, or any hearing on the motion for default, can be found in the record. We have no basis in the record on which to review the Trial Court's decision under an abuse of discretion standard, and we will not presume that the Trial Court abused its discretion in denying Chambers's motion for default.

We next address whether the Trial Court erred in granting the Bank's motion to dismiss. Since matters outside the pleadings were considered by the Trial Court when resolving the Bank's motion to dismiss, we will treat the Bank's motion as a motion for summary judgment in accordance with Tenn. R. Civ. P. 12.02.[2] *See Smith Mechanical*

---

[2]In relevant part, Rule 12.02 provides that if, "on a motion asserting the defense numbered (6) to
(continued...)

*Contractors, Inc. v. Premier Hotel Development Group*, 210 S.W.3d 557, 562-63 (Tenn. Ct. App. 2006). Our Supreme Court reiterated the standard of review in summary judgment cases as follows:

> The scope of review of a grant of summary judgment is well established. Because our inquiry involves a question of law, no presumption of correctness attaches to the judgment, and our task is to review the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Cent. S.*, 816 S.W.2d 741, 744 (Tenn. 1991).
>
> A summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party seeking the summary judgment has the ultimate burden of persuasion "that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Id*. at 215. If that motion is properly supported, the burden to establish a genuine issue of material fact shifts to the non-moving party. In order to shift the burden, the movant must either affirmatively negate an essential element of the nonmovant's claim or demonstrate that the nonmoving party cannot establish an essential element of his case. *Id*. at 215 n.5; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). "[C]onclusory assertion[s]" are not sufficient to shift the burden to the non-moving party. *Byrd*, 847 S.W.2d at 215; *see also Blanchard v. Kellum,* 975 S.W.2d 522, 525 (Tenn. 1998). Our state does not apply the federal standard for summary judgment. The standard established in *McCarley v. West Quality Food Service,* 960 S.W.2d 585, 588 (Tenn. 1998), sets out, in the words of one authority, "a reasonable, predictable summary judgment jurisprudence for our state." Judy M. Cornett, *The Legacy of Byrd v. Hall: Gossiping About Summary Judgment in Tennessee*, 69 Tenn. L. Rev. 175, 220 (2001).
>
> Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Robinson v. Omer*, 952

---

[2](...continued)
dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

S.W.2d 423, 426 (Tenn. 1997). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). In making that assessment, this Court must discard all countervailing evidence. *Byrd*, 847 S.W.2d at 210-11. Recently, this Court confirmed these principles in *Hannan*.

*Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 363-64 (Tenn. 2009).

Chambers makes his arguments on appeal as to this issue in a conclusory and unfocused manner. The argument section of Chambers's brief lacks proper citations to the record as required. In *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222 (Tenn. Ct. App. 2000), this Court observed that:

> *Pro se* litigants are entitled to fair and equal treatment. *See Childs v. Duckworth*, 705 F.2d 915, 922 (7th Cir. 1983). *Pro se* litigants are not, however, entitled to shift the burden of litigating their case to the courts. *See Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1194 (D.C. Cir. 1983). *Pro se* litigants are not excused from complying with the same substantive and procedural requirements that other represented parties must adhere to. *See Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988).

*Whitaker*, 32 S.W.3d at 227.

This case represents a procedural anomaly of sorts in that we must treat the Bank's motion to dismiss as a motion for summary judgment, yet no statement of undisputed material facts ever was filed. We, therefore, have reviewed the record and determined the material facts that are uncontested by either party. Penny Chambers signed a note in conjunction with a deed of trust in 2005. In 2006, Penny Chambers refinanced her mortgage. In 2008, Chambers signed the 2005 and 2006 notes, assuming the mortgage that his wife had created. The Bank advised Chambers that he was behind in payments and warned of foreclosure. Chambers subsequently sued the Bank. The parties filed their Joint Inspection Report with the Trial Court. Attempts to fully extinguish Chambers's debt through insurance recovery failed. Given the undisputed material facts, Chambers cannot prevail under any of the claims, as we understand them, advanced in either his original complaint or Plaintiff's More Definite Statement. We affirm the judgment of the Trial Court granting the Bank's motion dismissing the complaint.

Chambers argues that he was denied discovery rights essential to the disposition of a motion for summary judgment. We do not agree. The Trial Court quashed

Chambers's subpoenas duces tecum on December 7, 2009 in advance of a hearing then scheduled for December 16, 2009. The Trial Court quashed the subpoenas duces tecum only "until after the hearing on Dec. 16, 2009."

The best we can tell from the record before us, Chambers did not attempt to renew the subpoenas duces tecum after December 16, 2009. This temporary delay related solely to the subpoenas duces tecum cannot be regarded as denying Chambers his right to otherwise initiate a process of discovery as provided for by the Tennessee Rules of Civil Procedure.

Chambers disputes certain non-material facts. Chambers alleges that, while he signed the deed of trust from 2005, he did not sign a deed of trust in conjunction with the 2006 note. Chambers, however, signed the 2006 note in 2008, which included a box checked next to the statement "THIS NOTE IS SECURED BY A SEPARATE **TRUST DEED ON REAL ESTATE: POLK COUNTY (HOME MORTGAGE)**." We need not resolve herein whether Chambers's signature was forged on the 2006 deed of trust. Chambers also alleges that, in February 2008, a representative of the Bank indicated by email that it had placed insurance on the property when it had not done so. Chambers bases this claim on an email from an official of the Bank entered as an exhibit in the record. The email, allegedly a summary of an agreement, reads:

> Paul, you should obtain insurance as soon as possible because the bank placed insurance will cost you more and not cover your personal property. Get me the declaration of coverage as soon as you are able to obtain it and we will stop the bank placed insurance we talked about today. Thanks, Terry

"[B]ank placed" in the context of the email clearly designates only a type of insurance and is not a statement that the Bank had, in fact, placed insurance on the Property as of that time. The Bank later did purchase insurance on the Property in December 2008. In any event, it was Chambers's clear contractual obligation to maintain insurance on the Property. We find that Chambers has not disputed any material fact that would preclude us from finding, as the Trial Court effectively did, that the Bank is entitled to summary judgment.

After a careful and thorough review of the record on appeal, viewing the evidence and all reasonable inferences therefrom in the light most favorable to Chambers, as we must, we find that there are no genuine issues of material fact, and the Bank is entitled to judgment as a matter of law. We affirm the judgment of the Trial Court granting the Bank's motion dismissing the complaint.

We next address whether the Trial Court erred in denying Chambers's motion

to alter or amend. Chambers filed his motion pursuant to Tenn. R. Civ. P. 59 and Tenn. R. Civ. P. 60. Chambers's motion largely repeated his previous arguments and argued that the Bank had committed "fraud" upon the Trial Court. Given the record before us, we cannot and do not find that the Trial Court's ruling on Chambers's Tenn. R. Civ. P. 59 and/or 60 motion to alter or amend was an abuse of discretion. *See Whitworth v. Whitworth*, No. 2008-01521-COA-R3-CV, 2009 WL 2502002, at *4 (Tenn. Ct. App. Aug. 17, 2009), *no appl. perm. appeal filed* ("We review a trial court's denial of both a Rule 60 motion and a Rule 59 motion under an abuse of discretion standard.").

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellant, Paul W. Chambers, and his surety, if any, for which execution may issue, if necessary.


_____
D. MICHAEL SWINEY, JUDGE