**Michael P. WHITTINGHAM, Plaintiff,**

v.

**AMHERST COLLEGE, Defendant.**

**Civil Action No. 95–30065 FHF.**

United States District Court,
D. Massachusetts.

Dec. 8, 1995.

Donald J. Allison, Amherst, MA, Gary A. MacMillan, Scott R. Lucas, MacMillan & Lucas, Stamford, CT, for Plaintiff.

Felix J. Springer, Beverly W. Garofalo, Judy S. Loitherstein, Day, Berry & Howard Cityplace, Hartford, CT, for Defendant.

### MEMORANDUM AND ORDER WITH RESPECT TO PLAINTIFF MICHAEL P. WHITTINGHAM'S MOTION TO COMPEL (Docket No. 26)

NEIMAN, United States Magistrate Judge.

In the underlying action, Plaintiff Michael P. Whittingham alleges that Defendant Amherst College failed to promote him in the Admissions Office on account of his race and thereafter retaliated against him, all in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 and the Massachusetts Civil Rights statutes. Now, pursuant to Fed.R.Civ.P. 37, Plaintiff seeks to compel the production of certain documents withheld by Defendant in response to discovery requests. Broadly speaking, the documents fall into four categories: (1) documents prepared by Defendant's affirmative action officer in response to Plaintiff's request for an informal resolution; (2) personnel files of certain employees of Defendant; (3) documents discussing or relating to the advancement or promotion of black faculty members during the past ten years; and (4) salary information of employees in Plaintiff's department. In addition, Plaintiff seeks a copy of an informal file maintained by Plaintiff's supervisor. Defendant has variously objected to the production of these documents on grounds that they are irrelevant to the litigation, that the disclosure of the contents of certain personnel files would violate privacy rights of others, and that disclosure of affir-mative action documents would violate the self-critical analysis privilege.

The Court will address each of Plaintiff's requests in turn.

### Request No. 8

In Document Request No. 8, Plaintiff seeks the personnel file of Katie Fretwell, the individual who filled the Senior Associate Dean of Admissions position which Plaintiff otherwise wanted. In essence, Plaintiff asserts that Ms. Fretwell's personnel file, although produced, was expunged of all salary information. Defendant asserts that Plaintiff is simply mistaken and that all of the salary information in Ms. Fretwell's personnel file has been produced. To the extent that there is any confusion in this regard and because Defendant intended to provide Plaintiff with Ms. Fretwell's personnel file, including salary information therein, Plaintiff's motion is ALLOWED with respect to Request No. 8.

### Request Nos. 5, 6, 7 and 11

Document Request Nos. 5, 6, 7 and 11 seek the complete personnel files of certain former deans in the Admissions Office, namely Leonard Satterwhite and Leon Washington, who are black, as well as Anna Martinez, who is also a minority. Defendant objects on grounds that the documents are not relevant to the subject matter of the action or reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects to the disclosure of the remaining personnel files on grounds that disclosure of the documents would violate the privacy rights of others. In addition, Defendant notes that three other personnel files, which might arguably be said to relate to Plaintiff's claims— those of Jane Reynolds, the dean of the Admissions Office who was Plaintiff's supervisor, Flora Josephs, Plaintiff's secretary who Plaintiff alleges harassed him at the direction of Reynolds, and, as indicated, Katie Fretwell—have already been produced.

As a general matter, relevancy must be broadly construed at the discovery stage, that is, information is discoverable if there is any possibility it might be relevant to the subject matter of the action. See

*Gagne v. Reddy,* 104 F.R.D. 454, 456 (D.Mass.1984). "[R]elevant information includes any matter that is or may become an issue in the litigation." *Multi–Core, Inc. v. Southern Water Treatment Co.,* 139 F.R.D. 262, 264 n. 2 (D.Mass.1991) (citing *Microwave Research Corp. v. Sanders Assoc.,* 110 F.R.D. 669, 672 (D.Mass.1986)). However, it is also well settled that:

> [D]iscovery in Title VII cases involving highly individualized claims of discriminatory treatment should be restricted to the practices at issue in the case, applied to employees in similar circumstances to determine if the employer treats all of its employees under those circumstances in the same manner, or whether it treats employees similarly circumstanced differently and there is some basis for concluding that the difference in treatment is predicated on race, sex or some other grounds of unlawful discrimination.

*Suggs v. Capital Cities/ABC, Inc.,* 122 F.R.D. 430, 431 (S.D.N.Y.1988) (quoting *Hardrick v. Legal Services Corp.,* 96 F.R.D. 617, 619 (D.D.C.1983)).

■ To establish a claim of disparate treatment, "the plaintiff has the burden of showing that [he] was treated differently from persons situated similarly in all relevant aspects." *Smith v. Stratus Computer,* 40 F.3d 11, 17 (1st Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1958, 131 L.Ed.2d 850 (1995). Discovery in disparate treatment cases has been limited to employees within certain work units and who have suffered similar treatment as the plaintiff. *Robbins v. Camden City Bd. of Education,* 105 F.R.D. 49 (D.N.J.1985). See *Smith,* 40 F.3d at 17 (plaintiff vice-president, whose supervisor was dissatisfied with her performance, was not similarly situated to other vice-presidents where there was no evidence that the supervisor of the other vice-presidents were dissatisfied with their performance).

■ Nowhere, however, does Plaintiff offer any basis for how the personnel files he seeks are relevant to his claim of disparate treatment or his claim of a pattern and practice of discriminating against black employees. Rather, Plaintiff offers only the conclusory assertion that the files are relevant.

Yet, Plaintiff has made no real showing that these three individuals suffered similar treatment and, without a showing of such relevance, Plaintiff is not entitled to discovery. See *Clark v. Universal Builders, Inc.,* 501 F.2d 324, 340 (7th Cir.), *cert. denied* 419 U.S. 1070, 95 S.Ct. 657, 42 L.Ed.2d 666 (1974); and *McClain v. Mack Trucks, Inc.,* 85 F.R.D. 53, 57–58 (E.D.Pa.1979). See also *United States v. Concemi,* 957 F.2d 942, 949 (1st Cir.1992) ("[m]ere speculation as to the content of documents is hardly a showing of relevance.")

■ Nor has Plaintiff made a showing that these personnel files would demonstrate and/or support a claim of a pattern or practice of discrimination. "In order to prove a pattern or practice of discrimination, a plaintiff must show more than accidental or sporadic incidents of discrimination; she must show that 'discrimination was the company's standard operating procedure—the regular rather than the unusual practice.'" *Pitre v. Western Electric Co.,* 843 F.2d 1262, 1267 (10th Cir.1988) (quoting *International Broth. of Teamsters v. U.S.,* 431 U.S. 324, 333 & n. 16, 97 S.Ct. 1843, 1853 n. 16, 52 L.Ed.2d 396 (1977)). See also *Jensen v. Frank,* 912 F.2d 517, 523 (1st Cir.1990) ("[a] single instance of favoritism, even if proved, falls considerably short of showing an ongoing pattern and practice"); *Ste. Marie v. Eastern R. Asso.,* 650 F.2d 395, 406 (2d Cir.1981) (two individual acts of discrimination insufficient to prove a practice of discrimination); and *Wingfield v. United Technologies Corp.,* 678 F.Supp. 973, 981 (D.Conn.1988) ("evidence of individual and discrete incidents of discrimination . . . is inadequate to support a claim that there has been a pattern and practice of discrimination.")

■ Moreover, personnel files contain perhaps the most private information about an employee within the possession of an employer. Nonetheless, Plaintiff requests the Court to order the Defendant to hand over entire files of employees without any particularized showing that any, let alone all, of the information therein is relevant to his claims. Again, while discovery is usually broad, Plaintiff has not demonstrated that the files

he seeks, even if marginally relevant, outweigh the privacy interests of these individuals. See *Miles v. Boeing, Co.*, 154 F.R.D. 112, 115 (E.D.Pa.1994) (personnel files are confidential and discovery of them should be limited); and *Gehring v. Case Corp.*, 43 F.3d 340, 342 (7th Cir.1994) (upholding District Court decision that releasing personnel files of others would violate privacy interests), *cert. denied,* —— U.S. ——, 115 S.Ct. 2612, 132 L.Ed.2d 855 (1995).

The cases cited by Plaintiff are inapposite. *Jackson v. Harvard University*, 111 F.R.D. 472 (D.Mass.1986), stands for the conventional proposition that information related to similarly situated employees is discoverable. *Weahkee v. Norton*, 621 F.2d 1080, 1082 (10th Cir.1980) concerns the discoverability of personnel files of those who are "hired or promoted" over the plaintiff; Defendant has already provided Plaintiff with the personnel file of Katie Fretwell, the person promoted over Plaintiff. *Hubbard v. Rubbermaid, Inc.*, 78 F.R.D. 631 (D.Md.1978), does not address entire personnel files.

To the extent that one or more of the individuals whose personnel files Plaintiff seeks might be witnesses for the Plaintiff, as he has indicated, he may well be able to get access to a particular personnel file with consent of that witness and without running afoul of Defendant's obligation to ensure privacy. Having such an alternative, and for the reasons stated, Plaintiff's motion with respect to Request Nos. 6, 7 and 11 is DENIED.

### Request No. 33

■ Document Request No. 33 asks that Defendant produce all documents discussing or relating to the advancement or promotion of any minority faculty member employed by Defendant during the last ten years, even though Plaintiff was never a member of the faculty. In this regard, the Supreme Court has clarified the appropriate scope of discovery. See *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989). In *Wards Cove*, the plaintiff sought to prove disparate impact race discrimination by demonstrating that a high percentage of non-whites were employed in less skilled po-

sitions than in more skilled positions. The court, however, explicitly rejected a comparison of the racial composition of the unskilled cannery work force to the skilled non-cannery work force. *Id.*, 490 U.S. at 651, 109 S.Ct. at 2121–22. In the present matter, Plaintiff has not shown that the skills, knowledge and abilities required of faculty members are similar to those required of the position he sought in the Admissions Office.

Plaintiff's reliance on *Jackson, supra*, is again misplaced. The *Jackson* court expressly held that the plaintiff, a faculty member, could *not* discover information about non-faculty members. In refusing to require the defendant to produce the information, the court expressly stated that "[n]on-faculty employment decisions do not involve the same kind of consideration upon which tenure selections are made." *Id.*, 111 F.R.D. at 474. Obviously, the converse is true as well, and Plaintiff here simply has not otherwise shown the relevance of the information to his claims. Accordingly, Plaintiff's motion with regard to Document Request No. 33 must be DENIED.

### Request No. 38

■ The rationale applicable to Document Request No. 33, however, does not apply with respect to Document Request No. 38. Request No. 38 seeks Jane Reynolds' salary recommendations for persons employed in the office of Dean of Admissions. To the extent that this request concerns the salary recommendations for associate or assistant deans, as distinct from other personnel in the office, it is clearly relevant to Plaintiff's claims. At oral argument, Plaintiff, through counsel, consented to a narrowing of his request. Accordingly, Plaintiff's motion with respect to Request No. 38 is ALLOWED with respect to associate or assistant deans in the Admissions Office; with respect to other personnel, however, it is DENIED.

### Request Nos. 1 and 15

In Document Request No. 1, Plaintiff seeks all documents concerning any communications from or to the Defendant's affirmative action officer concerning Plaintiff. Similarly, in Document Request No. 15, Plaintiff

seeks all documents concerning any investigation performed by the affirmative action officer regarding any complaint or grievance filed by the Plaintiff, including but not limited to, any documents concerning interviews conducted in connection with such investigation.

Although otherwise responding to these requests, Defendant identified two documents which it refused to produce: (1) an August 4, 1993 memorandum from Hermenia T. Gardner, Affirmative Action Officer, to President Peter R. Pouncey Re: "Request from Michael Whittingham to Conduct an Informal Review of the May, 1993 Senior Associate Promotion in the Admissions' Office" (3 pages); and (2) an August 18, 1993 memorandum from Hermenia T. Gardner to President Peter R. Pouncey Re: "Suggested Settlement/Resolution Options to Informal Review Requested by Michael Whittingham" (2 pages). Defendant claims that these documents are not relevant or reasonably calculated to lead to the discovery of admissible evidence. More importantly for purposes here, Defendant seeks the protection of these documents pursuant to the self-critical analysis privilege.

The seminal case in this District addressing the self-critical analysis privilege in the context of employment discrimination is *O'Connor v. Chrysler Corp.*, 86 F.R.D. 211 (D.Mass.1980). See also *Jackson*, 111 F.R.D. 472. The dispute in *O'Connor* concerned the discoverability of the self-evaluation portions of the Chrysler Corporation's affirmative action plan prepared for the federal government pursuant to the mandates of certain executive orders. Here, as in *O'Connor*, Defendant asserts that there is a strong public policy against disclosure of an employer's self-analysis which far outweighs Plaintiff's need for that information for purposes of presenting his case. *O'Connor*, 86 F.R.D. at 213.

While the critical self-analysis privilege has "remained largely undefined," *Etienne v. Mitre Corporation*, 146 F.R.D. 145 (E.D.Va. 1993), the *O'Connor* Court recognized the privilege and, citing *Webb v. Westinghouse Electric Corp.*, 81 F.R.D. 431, 434 (E.D.Pa.

1978), noted "potential guideposts" for its application:

> (1) materials protected have generally been those prepared for mandatory governmental reports; (2) only subjective, evaluative materials have been protected; (3) objective data in those same reports have not been protected; and (4) in sensitivity to plaintiffs' need for such materials, Courts have denied discovery only where the policy favoring exclusion has clearly outweighed plaintiffs' need.

*O'Connor*, 86 F.R.D. at 217. See also *Etienne*, 146 F.R.D. at 147. In contrast, "a number of courts have declined to recognize the privilege or held that its application should be severely restricted in employment discrimination cases in view of the strong policy favoring private enforcement of the anti-discrimination laws." *Hardy v. New York News, Inc.*, 114 F.R.D. 633, 640 (S.D.N.Y.1987) (and cases cited). Indeed, as the *O'Connor* court itself noted, the self-analysis privilege carried to its logical extreme, would foreclose discovery of material which might be most strongly probative of discriminatory intent. *O'Connor*, 86 F.R.D. at 217.

Plaintiff makes much of the fact that the first guidepost refers to materials prepared as part of mandatory affirmative action compliance and that no such mandatory report was required in the present matter. In response, Defendant argues that *O'Connor*'s citation of the guidepost was merely a recitation of the status of case law and, further, that the *O'Connor* court applied the privilege more broadly, recognizing the danger that the free flow of information regarding affirmative action would be curtailed by forcing production of *any type of self-critical evaluation*.

In this respect, the Court agrees. As District Judge Robert E. Keeton indicated in *O'Connor*:

> [t]he central problem is a clash between highly-valued interests (1) in disclosure that will contribute to full and fair determination of all facts relevant to the plaintiff's claims and (2) in confidentiality both to assure fairness to persons who have been required by law to engage in self-evalua-

tion to promote the public interest in fair employment practices and to make the self-evaluation process more effective by creating an effective incentive structure for candid and unconstrained self-evaluation. *Id.* at 218. Judge Keeton also concluded that a lack of confidentiality would almost certainly result in some cramping of the investigative process. *Id.* at 217–18. In this regard, Defendant asserts that since its actions are in fact voluntary, not mandatory, the danger that its investigative process might be "cramped" is even greater; unlike the defendant in *O'Connor*, Defendant asserts, it could choose to wholly forego affirmative action.

■ While its explication of the law is in large part accurate, Defendant's application of that law to the circumstances in this particular matter is wanting. First, Defendant acknowledges that the two memoranda were in fact produced in response to Plaintiff's request for an informal review.[1] That the affirmative action officer chose to proceed in this way, rather than any other, to Plaintiff's request for an informal review is immaterial to the question at hand. Second, President Pouncey was· in fact the one who ultimately responded to Plaintiff with respect to the informal review. See Defendant's Objection to Plaintiff's Motion to Compel (Docket No. 31), Exhibit F (August 31, 1993 letter from President Pouncey to Plaintiff). In his letter to Plaintiff, Pouncey stated that "[o]n the matter of your seniority over Katie [Fretwell], neither I nor the Affirmative Action Officer feels there is anything between your two records to make an issue of." Id. Pouncey also made reference to the discussions which the affirmative action officer had with Ms. Reynolds. Id., at 4. While Defendant asserts that these references have nothing to

do with the memoranda sent by Ms. Gardner to Pouncey, in this Court's opinion, the memoranda are still related to Plaintiff's claims, if for no other reason than their being responsive to Plaintiff's request for an informal review.

Finally, the Court, at the request of the parties, has reviewed the actual documents, attached as Exhibit E to Defendant's Objection to Plaintiff's Motion to Compel and sealed by order of the Court.[2] The August 4, 1993 Memorandum addresses the process employed in the informal review and specifically addresses the promotion question. It is clearly relevant. While it contains certain long-range recommendations, it hardly amounts to the kind of self-critical analysis deserving of the Court's protection. Similarly, as its title indicates, the August 18, 1993 memorandum discusses the affirmative action officer's ideas with respect to the possible resolution or settlement of the informal review. Again, it is relevant and, in the Court's opinion, hardly falls within the self-critical analysis privilege. Both documents were generated as a result of Plaintiff's inquiry, not as part of an internal analysis of Defendant's employment and affirmative action policies, mandated or not.

The information in the documents is inextricably intertwined with, if not solely directed to, Plaintiff's request for an informal review. As importantly, there is no evidence that disclosure of these relevant documents would impair Defendant's ability or incentive to conduct affirmative action or employment policy reviews in the future. As distinct from the memoranda at issue here, such ·reviews would be divorced from individual cases, would reflect Defendant's avowed commitment to affirmative action, and might well

---

1. Defendant's Handbook for Trustee–Appointed Administrative and Professional Staff, a copy of which was provided to the Court at oral argument, provides as follows with respect to the informal review procedure:

   As informal discussions often result in solutions to employment problems more easily and quickly than do formal procedures, an appointee is encouraged to discuss any problem with his/her department head or chair, the Personnel Officer, or where appropriate, the Affirmative Action Officer, or the President of the College. If in doubt as to how to proceed, an

   appointee shall consult the Personnel Officer of the Affirmative Action Officer for assistance. College administrators have the responsibility for trying to effect a prompt resolution of any problem that may arise. Indeed, the very captions of the Memoranda refer to the informal review requested by Plaintiff.

2. The Court's *in camera* review presented none of the problems which Judge Keeton noted in *O'Connor*, 86 F.R.D. at 218, with respect to it being an impediment to a later fair trial and impartial fact-finding.

be afforded the protection of the privilege. That privilege, however, simply does not apply to the documents submitted by Defendant for *in camera* review. Accordingly, the Court ALLOWS Plaintiff's motion with respect to Request Nos. 1 and 15.

The documents produced in accord with this memorandum and order shall be subject to such confidentiality agreements as have been previously entered into or agreed upon by the parties.

IT IS SO ORDERED.