| | |
|---|---|
| **MAINE** | **BUSINESS AND CONSUMER COURT** |
| **CUMBERLAND, ss** | Location: Portland |
| | Docket No.: BCD-CV-09-35 |

IRVING OIL LIMITED and )
HIGHLANDS FUEL DELIVERY, LLC )
               Plaintiffs, )

      v. )   **ORDER ON DEFENDANT'S MOTION**
                     )   **FOR ISSUANCE OF LETTERS**
ACE INA INSURANCE, )   **ROGATORY**

           Defendant. )

## I.    INTRODUCTION

Before the Court is Defendant ACE INA Insurance's ("ACE") Motion for Issuance of Letters Rogatory. In said Motion, ACE requests this Court to ask the Ontario Superior Court of Justice to order certain discovery from Royal & Sun Alliance Insurance Company of Canada ("Royal"), its employee, Gillian Moorcroft, and Marsh Canada Limited ("Marsh"), the Irving Plaintiffs' insurance broker. Specifically, ACE's Letters Rogatory seek the assistance of the Canadian Courts in obtaining deposition testimony and documents that ACE needs to defend against the Irving Plaintiffs' claims. ACE contends that the requested discovery is relevant to: which underlying primary policies and coverage must be exhausted in order to trigger ACE's excess coverage; the scope, types, and limits of primary liability coverage; and whether the Irving Plaintiffs have established the necessary exhaustion to trigger ACE's excess coverage. For the reasons discussed below the Court denies the Defendant's motion as to Royal and Ms. Moorcroft and denies the motion without prejudice as to Marsh.

1

## II.    DISCUSSION

A. Royal

On June 25, 2015, this Court granted a Second Stipulated Order Amending Case Management Conference Scheduling Order No. 4.[1] Pursuant to the joint request of the Parties, ACE agreed that the deadline for completion of all fact and merit discovery would be August 28, 2015. At the time ACE agreed to the August 28, 2015 deadline, ACE was surely aware of the breadth of documents it requested from Royal its motion was filed with the Court on May 20, 2015. Because ACE's request will entail a process that cannot be expected to be completed within the latest facts/merits discovery deadline in this case, the Court denies ACE's motion as it relates to Royal Canada.

B. Gillian Moorcroft

ACE's request for documents and the deposition of Royal Canada employee, Gillian Moorcroft, is also untimely as the August 28, 2015 discovery deadline is fast approaching. ACE knew of Ms. Moorecroft's proffered testimony as of October 2014 when she submitted her first affidavit, and counsel for Ace admitted that it was aware of her testimony by December of 2014. However, Ace's counsel argues that it was not until it received the voluminous February 2015 discovery submitted by the Plaintiffs how significant her role would be. However, ACE failed to timely act and waited until May

---

[1] On June 24, 2014 the Court entered Case Management Order No. 4. This followed a conference of June 12, 2014 which had been set after the Supreme Judicial Court dismissed Plaintiff's appeal and Defendant's cross appeal. The June 24, 2014 order made it clear that any party initiating discovery had to do so sufficiently in advance of the pertinent discovery deadline to enable any party responding to the request to respond within that deadline. The order also set March 7, 2015 as the facts/merits discovery deadline. That order was amended by agreement on March 4, 2015 and the facts/merits discovery deadline was extended to June 26, 2015. The most recent amendment, as noted, extended that deadline to August 28, 2015.

2

20, 2015 to file this motion, and did so approximately a month before the (now-prior) discovery deadline expired.

As the Court stated at the hearing on this motion, based on the pendency of this case, absent unforeseen circumstances, the Court is unwilling to further extend the discovery deadline to accommodate this late request. The Court therefore denies ACE's motion in regard to documents and depositions requested from Gillian Moorecroft.

### C. Marsh

ACE has also requested a large number of documents as well as a deposition from Marsh. It is the Court's understanding that the Plaintiffs are still in the process of proffering a significant number of Marsh-related documents to ACE. Because ACE will receive those documents this week, the Court finds that ACE should, in fairness, have an appropriate period of time for adequate review. Thus, ACE shall complete its document review by close of business on July 17, 2015. On July 20, 2015 at 10:00 AM the Court will convene a telephonic conference with counsel for Marsh and counsel for the parties to this action. In said conference, Ace is expected to convey to the Court whether the documents provided by Irving were responsive to its requests and whether there is a substantial, good faith basis to request more discovery from Marsh directly through the letters rogatory process. ACE's motion as it pertains to Marsh is therefore denied without prejudice.

### III. CONCLUSION

Based on the foregoing the entry shall be:

ACE's Motion for the Issuance of Letters Rogatory as to Royal and Ms. Moorcroft. ACE shall complete its document review in relation to Marsh

3

on or before close of business July 17, 2015. The Court will convene a telephonic conference with Marsh and counsel for the parties on July 20, 2015 at 10 AM.

Pursuant to M.R. Civ. P. 79(a), the Clerk is herby directed to incorporate the Order by reference in the docket.

Dated: July  8, 2015                          _____/s_____
                                              **M. Michaela Murphy, Justice**
                                              **Business and Consumer Court**

4

**Irving Oil Limited and**
**Highland Fuel Delivery, LLC**
      **Plaintiff**

        Counsel:               John Ciraldo, Esq.
                           David McConnell, Esq.
                           Jennifer Pincus, Esq.
                           One Canal Plaza, Suite 900
                           PO Box 426
                           Portland, ME 04112-0426

**Ace INA Insurance**
      **Defendant**

        Counsel:               Harold Friedman, Esq.
                           Brett Leland, Esq.
                           One Portland Square
                           PO Box 586
                           Portland, ME 04112-0586
                               AND
                           Laurence Leavitt, Esq.
                           25 Pearl Street
                           PO Box 4726
                           Portland, ME 04112-4726

|  |  |  |
|---|---|---|
| IRVING OIL LIMITED and HIGHLANDS FUEL DELIVERY, LLC | ) ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) | **ORDER ON PLAINTIFFS' MOTION TO COMPEL PRODUCTION** |
| ACE INA INSURANCE, | ) ) |  |
| Defendant. | ) ) ) |  |

## I.  INTRODUCTION

Before the court is Plaintiffs', Irving Oil Limited ("IOL"), and Highlands Fuel Delivery, LLC ("Highlands") (collectively, the "Irving Entities" or "Plaintiffs") Motion to Compel the Production of certain claim and underwriting files maintained by Defendant ACE INA, Insurance ("ACE"). Through this motion, Plaintiffs seek an order compelling ACE to conduct a reasonably diligent search for and to produce all non-privileged documents responsive to Plaintiffs' Second Request for Production of Documents. Pursuant to the February 12, 2015 hearing on the matter, the court has conducted *in camera* review of the disputed documents submitted by ACE.

## II.  FACTS

Since 2003, over sixty (60) lawsuits have been filed against the Irving Entities based on the presence of *methyl tertiary butyl ether* ("MTBE") in Plaintiffs' refined gasoline products. As a result of the various lawsuits, the Plaintiffs incurred significant unreimbursed expenses in connection with the investigation, defense, and settlement.

1

The Plaintiffs anticipate that even more expenses will be incurred as a result of the Vermont MTBE Lawsuit. (Pls.'s Sec. Amd. Compl. ¶ 15.)

In response to the various lawsuits, the Plaintiffs contacted ACE alleging that the applicable product hazard limits of liability of Plaintiffs' primary insurance policies underlying the ACE umbrella policies had been exhausted. (Pls.' Sec. Amd. Compl. ¶ 16.) The Plaintiffs requested that ACE provide a defense to the Vermont MTBE Lawsuit and agree to indemnify them under the applicable ACE umbrella policies for any adverse judgment that may be entered. The Plaintiffs further informed ACE of the settlement of the MTBE suits and requested that ACE contribute. *Id.* ACE denies that the underlying primary policies have been exhausted. Plaintiffs brought the underlying action seeking declaratory relief and damages for breach of contract and unfair claims settlement practices arising from the Defendant's alleged willful and bad-faith refusal to defend or indemnify the Plaintiffs under umbrella liability insurance policies in numerous underlying product liability actions brought against the Plaintiffs. (Pls.' Sec. Amd. Compl. ¶ 1.)

Plaintiffs now seek to compel ACE to produce its entire claim files for the MTBE Lawsuits against the Irving Entities, communications with other insurers about MTBE Lawsuits against the Irving Entities, numerous documents maintained in ACE's underwriting files, standard form policies, and re-insurance related documents. The court has reviewed the necessary documents *in camera* and has made a determination as to discovery below.

2

# III. STANDARD OF REVIEW

## A. Work-Product Doctrine

The purpose of the work-product doctrine and associated rule is to "promote the adversary system by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation." *Springfield Terminal Ry. Co. v. Dep't of Transp.*, 2000 ME 126, ¶ 19, 754 A.2d 353. Pursuant to M.R. Civ. P. 26(b)(3):

> [A] party may obtain discovery of *documents and tangible things* . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

(Emphasis added). Because the work-product privilege applies only to documents and tangible things, "discovery of work product will be denied if the party seeking discovery can obtain the desired information by taking the deposition of witnesses." Wright and Miller, 8 Federal Practice and Procedure § 2025 at 538 (3d ed. 2010); *accord Eoppolo v. Nat'l R. Passenger Corp.*, 108 F.R.D. 292, 294 (E.D. Pa. 1985).

In Maine, the party seeking protection from the work product doctrine "must show that the documents were prepared *principally or exclusively* to assist in anticipated or ongoing litigation." *Springfield Terminal*, 2000 ME 126, ¶ 17, 754 A.2d 353 (citing *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) (emphasis added)). "[T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *Id.* ¶ 17 (citing *In re Grand*

3

*Jury Proceedings,* 604 F.2d 798, 803 (3d Cir. 1979)). Moreover, it is not just the work of the attorney that is protected. Also protected are documents created by the party or the party's representatives, as long as they are created in anticipation of litigation. *Id.* ¶ 18; *see also* M.R. Civ. P. 26(b)(3). "A remote possibility of litigation is insufficient," however, "and some courts even have found the likelihood of litigation to be a deficient showing, requiring a substantial probability with commencement imminent." *Springfield Terminal,* 2000 ME 126, ¶ 19, 754 A.2d 353 (internal citations omitted).

"Rule 26(b)(3) . . . contemplates a preliminary analysis by the trial court to determine whether the party seeking to protect the material from disclosure has met its burden of establishing that the document is work product." *See* M.R. Civ. P. 26(b)(3). "If that burden is met, the burden then shifts to the party seeking disclosure to demonstrate that it has substantial need of the materials and cannot obtain the document otherwise without undue hardship." *Springfield Terminal,* 2000 ME 126, ¶ 14, 754 A.2d 353 (citing M.R. Civ. P. 26(b)(3))." Finally, even if the party seeking disclosure can establish substantial need and undue hardship, documents or parts of documents, containing "mental impressions, conclusions, opinions, or legal theories of an attorney" shall not be disclosed. *See id.*

### B. Attorney-Client Privilege

"The purpose of the attorney-client privilege is to encourage clients to make full disclosure to their attorneys and to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Corey v. Norman, Hanson & DeTroy,* 1999 ME 196, ¶

4

18, 742 A.2d 933 (quotation marks and internal citations omitted). Pursuant to M.R. Evid. 502 (b):

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between the client or the client's representative and the client's lawyer or the lawyer's representative, or (2) between the lawyer and the lawyer's representative, or (3) by the client or the client's representative or the lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein, or (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.[1]

The "burden of establishing the existence of privilege is on [the] party objecting to [its] discovery." *Pierce v. Grove Mfg. Co.*, 576 A.2d 196, 199 (Me. 1990). Nevertheless, the privilege belongs to the client and "[o]nce it is waived, it cannot be later revived." Field & Murray, *Maine Evidence* § 502.5 at 220 (6th ed. 2007); *Kohl's Dept. Stores, Inc. v. Liberty Mut. Ins. Co*, BCD-CV-12-13 (Bus. & Consumer Ct. Oct. 11, 2012, *Humphrey, C.J.*).

## IV. DISCUSSION

### A. Documents Protected from Discovery by the Work-Product Doctrine

Under the standard set forth in *Springfield Terminal*, the party seeking protection from the work product doctrine must demonstrate that the documents were prepared exclusively to assist in anticipated or ongoing litigation. 2000 ME 126, ¶ 16, 754 A.2d 353. Based on the court's *in camera* review of the subject documents, the court finds that the following are protected by the work product doctrine:

---

[1] A "client" is a person, public officer, or corporation, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from the lawyer. M.R. Evid. 502(a)(1).

5

- November 21, 2005 ACE handwritten notes regarding conference call with Stuart Rogers (of Marsh, Irving's insurance broker) and Ralph Muoio (of Covington & Burling) regarding MTBE suits.[2]

- ACE handwritten notes regarding status of MTBE suits and Irving's suit against its primary insurers pending in the State of New Hampshire Superior Court.[3]

- ACE handwritten notes concerning discussions with counsel for insurers and/or insurers' representatives regarding action *captioned Irving Oil Limited, et al. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, et al., State of New Hampshire Superior Court.*[4]

At the time these documents were created, ACE was aware of Irving's lawsuit against its underlying primary insurers in New Hampshire Superior Court. By November of 2005, counsel for Irving had contacted ACE in attempt to resolve Irving's demand for excess coverage from ACE. In light of the nature of the documents and the factual situation of this particular case, the documents can reasonably be said to have been prepared or obtained *because* of the prospect of litigation. *Springfield Terminal*, 2000 ME 126, ¶ 17, 754 A.2d 353. Plaintiffs must now satisfy the burden of establishing that a substantial need for the above documents exists.[5] *Id.* ¶ 15.

### 1. *Irving Entities' Substantial Need*

Under M.R. Civ. P. 26(b)(3) a party seeking discovery of materials protected by the work product privilege must demonstrate a substantial need for the materials exists and that "the party is unable without undue hardship to obtain the substantial equivalent

---

[2] *See* (Def.'s Amd. Priv. Log. 8.)

[3] *See* (Def.'s Amd. Priv. Log. 22.)

[4] *See Id.*

[5] The Irving Entities contend that ACE has not come forward with admissible evidence that the Irving-related claim files were prepared principally or exclusively in anticipation of litigation. Plaintiffs further question the validity of statements made by ACE's in-house counsel John Roth. Plaintiffs contend that Mr. Roth is not personally familiar with ACE's handling of the Irving Entities' insurance claims and absent such knowledge, Mr. Roth is merely speculating about the documents. However, the court finds that this argument is vitiated by the court's *in camera* review of the subject documents.

6

of the materials by other means." *Id.* "[T]he clearest basis for production is when crucial information is in the exclusive control of the opposing party." *Barry v. USAA*, 989 P.2d 1172, 1177 (1999).

The court agrees that it is particularly difficult to demonstrate a violation of the Unfair Claims Settlement Practices Act[6] when one party is in exclusive control of the only evidence on the matter. Some jurisdictions allow a *per se* finding of substantial need where a bad faith allegation has been made. *In re Sealed Case*, 676 F.2d 793, 807 (D.C. Cir. 1982); *Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1219–20 (4th Cir. 1976)).

However, in *Gagne v. Ralph Pill Electric Supply Company*, the United States District Court for the District of Maine adopted the view of the Second Circuit which requires "one who seeks to override the [work product] doctrine to present sufficient facts to establish probable cause to believe that a crime or fraud was committed and that the documents were prepared and used as part of an ongoing scheme of crime or fraud." 114 F.R.D. 22, 27-28 (D. Me. 1987) (citing *In re John Doe Corp.*, 675 F.2d 482 (2d Cir. 1982)). Although no allegations of crime or fraud are made here, the Court will require Plaintiffs to present the court with probable cause to believe that ACE acted in bad faith and violated the Unfair Claims Settlement Practices Act.

In this case, the gravamen of Plaintiffs' Complaint seeks to determine whether ACE conducted a good-faith investigation of Plaintiffs' claims and what steps ACE took to investigate. Plaintiffs contend that ACE has violated the Unfair Claims Settlement Practices Act by knowingly misrepresenting terms and effects of certain coverage and repeatedly failing to determine its defense responsibilities to the Plaintiffs in active

---

[6] 24-A M.R.S.A § 2436-A.

7

MTBE lawsuits. Plaintiffs argue that ACE's claim files are necessary as contemporaneous documentary record of ACE's investigation. *See Gould v. Travelers, Inc.*, 1991 Me. Super. LEXIS 214 (Me. Super. Ct. Sept. 27, 1991) (finding substantial need where bad faith claim was alleged).

It is established law in Maine that "the analysis of an insurer's duty to defend involves solely a comparison of the allegations in the underlying complaint with the provisions of the insurance policy." *Mitchell v. Allstate Ins. Co.*, 2011 ME 133, ¶ 8, 36 A.3d 876. "Under the comparison test . . . no investigation of the insured's claim is required to determine whether a duty to defend exists." *Anderson v. Virginia Sur. Co. Inc.*, 985 F. Supp 182, 192 (D. Me. 1998). In this case, ACE waited five years to deny coverage for the MTBE Lawsuits based on information apparent from the face of the policies and the underlying complaints.

The court finds that the Plaintiffs have presented the requisite probable cause to overcome the work product doctrine and to compel discovery of the above-mentioned documents. The court believes that access to said documents might provide the Plaintiffs with the information they need to evaluate ACE's handling of the MTBE claims and determine if there was a violation of the Unfair Claims Settlement Practices Act. However, notwithstanding the Plaintiffs' substantial need for the protected documents, the court has redacted language containing "mental impressions, conclusions, opinions, or legal theories." *Springfield Terminal Ry. Co. v. Dep't of Transp.*, 2000 ME 126, ¶ 14, 754 A.2d 353, 357.

Further, Plaintiffs contend that they need certain documents to refresh the recollection of former ACE employees such as Anne Gray and Kara Fagan. Both are no

8

longer employed by ACE and Plaintiff's contend that it is likely that that they will need to refresh the witness' memory. ACE relies on *Davis v. Emery Air Freight Corp.*, for the assertion that speculative and unsubstantiated assertions of alleged faulty memory of a witness do not suffice to establish substantial need. 212 F.R.D. 432, 436-37 (D. Me. 2003).

The court agrees that broad unsubstantiated assertions of unavailability or faulty memory are insufficient to arise to a substantial need. However, in this case, the Plaintiffs have sought production of documents to refresh the recollection of witnesses who are no longer employed in their relevant positions with ACE. Thus, it is reasonable to conclude that these witnesses may be unable to remember facts relevant to the Plaintiffs' deposition. Further, the Plaintiffs have indicated that the depositions will take place in Canada. To promote efficiency, and prevent repeated depositions, the court finds that the Plaintiffs have presented more than a mere unsubstantiated assertion of faulty memory. Thus, the Plaintiffs have a substantial need for said documents.

## B. Documents Subject to the Attorney-Client Privilege

The Plaintiffs have requested numerous documents that ACE claims are protected by the attorney-client privilege. These documents include joint defense/common interest communication between Anne Gray of ACE and counsel for Plaintiffs' primary insurers, as well as e-mails between Kara Fagan of ACE and outside counsel Michael Goodhue. The court addresses each in turn.

### 1. *Joint Defense Communication*

The specific joint defense communication documents ACE claims are protected by the attorney-client privilege include the following documents:

9

- February 6, 2006, joint defense communication between Anne Gray of ACE and counsel for insurers' and/ or insurers' representatives regarding action captioned *Irving Oil Limited, et al. v. Nat'l union Fire Ins. Co. of Pittsburgh, PA, et al., State of New Hampshire Superior Court.*[7]

- March 1, 2006, e-mail correspondence between Anne Gray of ACE and counsel for insurers' and/ or insurers' representatives regarding action captioned *Irving Oil Limited, et al. v. Nat'l union Fire Ins. Co. of Pittsburgh, PA, et al., State of New Hampshire Superior Court.*[8]

Both of the above e-mails contain communication between Anne Gray of ACE and counsel for Plaintiffs' primary insurers concerning joint defense strategy. Generally, disclosing attorney-client communications to a third-party undermines the attorney-client privilege. *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999) (stating that "the attorney-client privilege generally applies only to communications between the attorney and the client"). However, in Maine, the "common interest" rule is embedded in the attorney-client privilege. Said rule preserves the confidentiality of privileged information if disclosures are made to certain third parties and their attorneys, concerning a matter of common interest in a pending action. The rule states:

> A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of any confidential communication . . . [b]y the client, the client's representative, the client's lawyer, or the lawyer's representative to a lawyer representing another party in a pending action concerning a matter of common interest therein.

M.R. Evid. 502(b)(3) (*Restyled ed.* 2015).

The common-interest doctrine is "not an independent basis for privilege, but an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to a third-party. *Cavallaro v. United* States, 284 F.3d 236, 250 (1st Cir. 2002). In order for the common interest exception to apply, "the party asserting

---

[7] *See* (Def.'s Amd. Priv. Log. 8-9.)

[8] *See* (Def.'s Amd. Priv. Log. 11.)

10

the privilege must show that (1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived." *United States v. Bay State Ambulance and Hosp. Rental Serv. Inc.,* 874 F.2d 20, 28 (1st Cir. 1989). "To qualify for the privilege, the communication must have been made in confidence." *Id.; see also Ken's Foods, Inc. v. Ken's Steak House, Inc.,* 213 F.R.D. 89, 93 (D. Mass. 2002).

The policy behind the doctrine is to prevent disclosure when the attorneys share their respective legal strategies. *In re Teleglobe Communications Corp.,* 493 F.3d. 345, 365 (3d Cir. 2007); Restatement (Third) of the Law Governing Lawyers § 76 cmt. d. ("A person who is not represented by a lawyer and who is not himself or herself a lawyer cannot participate in a common-interest arrangement"); 2 *Weinstein's Fed. Evid.* § 503.21[2], at 503-68 ("The [common-interest] privilege applies to communications made *by the client or client's lawyer to a lawyer representing another in a matter of common interest.*") (emphasis added and quotations omitted).

ACE contends that the e-mail communication is privileged as all of the parties to the e-mails shared a common interest in litigation defense against the Irving Entities. Further, the distribution list consisted exclusively of client representatives and counsel. However, a plain reading of M.R. Evid. 502(b)(3) reveals that the doctrine only protects common interest communication in two relatively narrow circumstances: first, when a client or a representative of a client sends confidential information to a lawyer representing another party in a pending action concerning a matter of common interest therein; and second, when a lawyer for a client sends confidential information to a lawyer

11

representing another party in a pending action concerning a matter of common interest therein.[9]

In Maine, courts examine the plain meaning of statutory language. "Only if the statutory language is ambiguous—that is, reasonably susceptible to more than one interpretation—will [the court] consider other indicia of legislative intent. *Griffin v. Griffin*, 2014 ME 70, ¶ 18, 92 A.3d 1144; *Sunshine v. Brett*, 2014 ME 146, ¶ 13, 106 A.3d 1123. In this case, Anne Gray was an employee of ACE. There is no indication that counsel for ACE was cc'd or included in the e-mail chain. The court finds that this type of transaction, while protected by the Restatement, is not protected under a plain reading of Rule 502(b)(3). Thus, under the strict confines of the Rule, the fact that ACE's counsel was not present vitiates any claim to the attorney-client privilege under the common interest doctrine. The court finds that the common interest rule does not apply to protect the above-mentioned e-mails.

---

[9] In *Kohl's Department Stores, Inc. v. Liberty Mutual Insurance*, the Business and Consumer Court applied the more expansive Restatement (Third) of Law Governing Lawyers, which states: "[u]nder the privilege, any member of a client set – a client, the client's agent for communication, the client's lawyer, and the lawyer's agent . . . can exchange communications with members of a similar client set." BCD-CV-12-13 (Bus. & Consumer Ct. Oct. 11, 2012, *Humphrey*, C. J.) at 6 (quoting Restatement (Third) of the Law Governing Lawyers § 76 cmt. d.). However, the *Kohl's* case is distinguishable in that it concerned a matter of first impression in Maine where an insurer provided a defense to its insured, and the insured and insurer subsequently cooperated in the preparation of litigation. The court reasoned:

[T]he insurer and the insured should be able to communicate freely with respect to the litigation to the extent of their common interest without fear that the plaintiff in a subsequent . . . litigation could seek discovery of those communications. To hold otherwise would hamstring an insured in defense of claims against it and significantly jeopardize the opportunity for settlement of the litigation.

*Id.* Because the Rule 502(b)(3) does not contemplate the insurer-insured joint defense relationship, the court adopted the more expansive Restatement. However, the relationship between ACE and the Plaintiffs' primary insurers is in the court's view the type of relationship contemplated by the rule and thus the court will follow the Rule accordingly.

12

Defendants also assert that the documents are protected as work product, but based on the Plaintiff's demonstration of substantial need, the court finds that the documents are discoverable work product.

### 2. *ACE's Communication with Michael Goodhue*

The Plaintiffs seek production of e-mail correspondence between ACE's representative Kara Fagan, and Attorney Michael Goodhue. The e-mails are described as:

- E-mail correspondence between Kara Fagan (of ACE) and outside counsel retained to represent and advise ACE with respect to coverage issues related to MTBE suits.[10]

Generally, when an insurer hires a licensed attorney to perform the investigation and handling of a policyholder's claim, the attorney-client privilege will only attach to communications made for the purpose of securing legal advice. *In re Teleglobe Comnc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007). An insurer may not assign its ordinary business functions to an attorney in an attempt to "cloak with privilege matters that would otherwise be discoverable." *Merrin Jewelry Co. v. St. Paul Fire & Marine Ins. Co.*, 49 F.R.D. 54, 57 (S.D.N.Y. 1970). The court agrees that insurers should not be allowed to create a "blanket obstruction to discovery of its claims investigation" merely by hiring outside counsel to conduct that investigation. *Mission Nat'l Ins. Co. v. Lilly*, 112 F.R.D. 160, 163 (D. Minn. 1986).

Plaintiff contends that ACE has failed to provide the court with any admissible evidence that the communication with outside counsel from 2005-2009 is privileged communication for the purpose of obtaining legal advice. ACE contends that it

---

[10] Said e-mails are dated: August 7, 2007; August 21, 2007; February 7, 2008; February 11, 2008; February 14, 2008; and April 2, 2008. *See* (Def.'s Amd. Priv. Log 15-20.)

communicated with outside counsel for two purposes. First to provide ACE with legal advice with respect to Irving's pending coverage litigation; and second, to provide ACE with legal advice regarding its obligations, if any, to provide Irving excess coverage for the underlying MTBE suits. The Plaintiffs contend that Goodhue was not counsel for the underlying litigation, but counsel for the underlying claim investigation.

After conducting *in camera* review of the subject documents, the court finds that the e-mails and memoranda submitted to this court between Kara Fagan and Attorney Goodhue are protected by the attorney-client privilege. It is clear that the e-mails submitted to the court contain legal substantive and procedural advice concerning MTBE litigation.

### 3. *No Exception to the Attorney-Client Privilege Applies*

This court declines to adopt a *per se* rule that mere allegations of unfair claims settlement practices pierces the attorney-client privilege. The Attorney-client privilege is "the oldest of the privileges for confidential communication known to the common law . . . . Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *In re Motion to Quash Bar Counsel Subpoena*, 2009 ME 104, ¶ 13, 982 A.2d 330 (quotation marks and internal citations omitted). The court finds that the Plaintiffs have established more than "mere allegations" of unfair claims practices. Rather, as mentioned above, the court finds that the Plaintiffs have established probable cause that such violations exist.

The court also declines to extend the crime/fraud exception to the attorney-client privilege to encompass violations of the Unfair Claims Settlement Practices Act where

14

only probable cause of said violations exists.[11] The Law Court has instructed that in order to trigger the crime/fraud exception, a party must prove by a preponderance of the evidence that the exception applies to pierce the attorney-client privilege. *In re Motion to Quash Bar Counsel Subpoena*, 2009 ME 104, ¶ 19, 982 A.2d 330.

While the Law Court has not had the opportunity to rule directly on this issue, in *Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co.*, the United States District Court for the District of Massachusetts refused to apply the crime/fraud exception to unfair claim settlement conduct. 173 F.R.D. 7, 12 (D. Mass. 1997). Like Maine, Massachusetts recognizes that "facts establishing the crime/fraud exception must be proved by a preponderance of the evidence." *Id. (quotations omitted).* The Court maintained the narrow reading of the evidentiary rule to include only a "crime or fraud" and found that "it is inappropriate to extend the exception to an unfair and deceptive trade practices claim." *Id.* 12-13.

Even assuming for purposes of argument, that the tort of an unfair claims settlement practice during claim processing and/or effectuating settlements is sufficient to warrant applying the crime/fraud exception, the court finds that the Plaintiffs nevertheless fail to show that ACE sought the assistance or advice of counsel "in furtherance of a crime or fraud." M.R. Evid. 502 (d)(1). Under Maine law, the Plaintiffs must show, by a preponderance of the evidence, that ACE consulted counsel "in furtherance of a crime or fraud". *Id.*

While probable cause of a violation of the Unfair Claims Settlement Practices Act may warrant the piercing of work product protection, the Plaintiffs have failed to meet

---

[11] In Maine, the crime fraud exception applies where "the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud. M.R. Evid. 502(d)(1).

15

the preponderance burden necessary to pierce the attorney-client privilege. Thus, the court finds that the documents are protected by the attorney-client privilege and do not fall within any exception to the privilege recognized by Maine law.

## C. Documents Subject to the Relevancy Standard Under M.R. Civ. P. 26(b)(1)

### 1. *Reinsurance Information and Communication*

The Plaintiffs have requested discovery of certain communication between ACE and ACE's reinsurer. ACE has identified these documents as: "Correspondence with ACE's reinsurer that post-dates Irving's filing suit against ACE and concerns Irving's suit against ACE."[12] ACE claims that the documents are protected by both the work-product doctrine and the attorney-client privilege. The Plaintiffs argue that any privilege was pierced upon furnishing the document to the reinsurer. After reviewing the documents *in camera* the court finds that these documents are partially protected to the extent that the documents contain opinion work-product. Although Rule 26 makes ordinary work product discoverable where there is a substantial need, the Rule specifically protects opinion work-product from disclosure even in the face of undue hardship. Therefore, after careful review, the court has redacted the reinsurance communications to the extent that they include the "mental impressions, conclusions, opinions, or legal theories" of ACE or its attorneys. The remaining portion of the documents are discoverable so long as they are relevant to the underlying litigation.

### a. *Relevance of Reinsurance Communications*

Case law across the United States is unsettled as to whether reinsurance information is relevant in a coverage dispute. Some courts find that reinsurance documents and an insurer's communication with its reinsurers are relevant and therefore

---

[12] *See* (Def.'s Amd. Priv. Log. 25.)

16

discoverable. *See, e.g., Regence Group v. TIG Specialty Ins. Co.*, 2010 WL 476646, at *3 (D. Or. Feb. 4, 2010) (allowing discovery of "[d]ocuments exchanged between [the insurer] and its reinsurers about th[e] underlying litigation"); *Cigna Ins. Co. v. Cooper Tire & Rubber, Inc.*, 180 F. Supp. 2d 933, 936 (N.D. Ohio 2001) (discovery relating to reinsurance is relevant and discoverable). However, other courts have explicitly held that reinsurance information is not relevant in a coverage dispute. These courts note that a policyholder is not a party to the reinsurance contract and does not have any rights under that reinsurance contract. *See, e.g., Leksi, Inc. v. Fed. Ins. Co.*, 129 F.R.D. 99, 106 (D.N.J. 1989) (the relevance of reinsurance "is very tenuous and its production is not compelled"); *Rhone-Poulenc Rorer, Inc., v. Home Indem. Co.*, 139 F.R.D. 609, 613 (E.D. Pa. 1991) *on reconsideration in part*, No. CIV. A. 88-9752, 1991 WL 237636 (E.D. Pa. Nov. 7, 1991) (denying request for reinsurance information where "vague and limited monetary demands are insufficient to bring the reinsurance agreements" within the scope of discovery).

In this case, the court finds that the communication between ACE and its reinsurers that post-dates Irving's filing of the underlying action is relevant to the underlying litigation and discoverable.[13] Pursuant to M.R. Civ. P. 26(b)(1):

"[p]arties obtain discovery regarding any matter, not privileged, which is *relevant* to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

---

[13] *See* (Def.'s Amd. Priv. Log 25.) The court has only considered reinsurance documents that post-date the filing of the underlying suit. Reinsurance documents pre-dating the action were not submitted to this court for *in camera* review.

17

M.R. Civ. P. 26(b)(1). The term "relevant information" within Rule 26 "includes any matter that is or may become an issue in the litigation." *Whittingham v. Amherst College*, 164 F.R.D. 124, 127 (D. Mass. 1995). Further, "[t]he party resisting production bears the burden of establishing lack of relevancy or undue burden." *Aponte-Navedo, et al. v. Nalco Chemical Co., et al.*, 268 F.R.D. 31, 36 (D.P.R. 2010). In this case, the Plaintiff has alleged a violation of the Unfair Claims Settlement Practices Act. It is clear that ACE's communications with reinsurers are relevant to this claim as it may reveal ACE's internal evaluation of the claim. The reinsurance communication may further reveal that ACE has taken inconsistent position with the Plaintiffs, which may provide for the unfair claims violation. *Fireman's Fund Ins. Co. v. Superior Court*, 233 Cal. App. 3d 1138, 1141 (1991) (noting the trial court "abused its discretion in ordering disclosure of . . . reinsurance documents without first reviewing them in camera."). Thus, after reviewing the subject documents *in camera*, the court finds that they are relevant and therefore discoverable subject to the courts redaction of "mental impressions, conclusions, opinions, or legal theories" of ACE or its attorneys.

### 2. *Pricing and Rating Information*[14]

Plaintiffs seek the production of documents containing certain pricing and rating information.[15] ACE contends that said documents are irrelevant to the underlying action and did not submit them to this court for *in camera* review. At the February 12, 2015 oral argument on this matter, ACE explained that the documents contain proprietary market information. However, given the lenient standard for relevance under Rule

---

[14] It is the understanding of the court that the parties have come to an agreement concerning the discoverability of ACE's standard form language and policies. Therefore, the court has omitted analysis as to this information.

[15] *See* (Def.'s Amd. Priv. Log 1, 5.)

18

26(b)(1), the court finds that these documents are relevant as they may provide evidence of the values assigned to the Plaintiffs' claims and allow for assessment of any bad faith in the processing of the Plaintiffs' claims. Because of the sensitive nature of the information the Plaintiffs have demonstrated consistent willingness to abide by confidentiality requests and agree to reasonable protective orders.

### 3. *Publications and Articles Concerning*

Finally, Plaintiffs seek discovery of copies of publications and articles on coverage issues related to MTBE suits. ACE contends that these documents are protected by the work-product doctrine because the articles were selected and obtained in anticipation of litigation and discovery of such will reveal ACE's mental impressions.[16] Opinion work product "typically includes items such as attorney's legal strategy, intended lines of proof, evaluation of strengths and weaknesses of his case, and inferences he draws from interviews of witnesses, and is normally accorded absolute protection from discovery." *Frazier v. Se. Pennsylvania Transp. Auth.*, 161 F.R.D. 309 (E.D. Pa. 1995). Moreover, the court understands "it is not just the work of the attorney that is protected [by the work product doctrine]. Also protected are documents created by the party or the party's representatives, as long as they are created in anticipation of litigation." *See* M.R. Civ. P. 26(b)(3). *Springfield Terminal Ry. Co. v. Dep't of Transp.*, 2000 ME 126, ¶ 18, 754 A.2d 353, 358.

However, in this case, based on the minimal description provided by ACE, the articles and publications consist of non-protected factual information, and thus, must be produced. The mere fact that an attorney or a party representative reviews an article or publication does not mean that the underlying data or the document itself is privileged.

---

[16] *See* (Def.'s Amd. Priv. Log 23.)

19

Rather only confidential communications made with legal objectives are privileged. Thus, because these documents are relevant to the underlying action, they are discoverable.

## V. CONCLUSION

Based on the foregoing, the court GRANTS plaintiffs Motion to Compel as to the following documents:

- November 21, 2005 ACE handwritten notes regarding conference call with Stuart Rogers (of Marsh, Irving's insurance broker) and Ralph Muoio (of Covington Burling) regarding MTBE suits.[17]

- ACE handwritten notes regarding status of MTBE suits and Irving's suit against its primary insurers pending in the State of New Hampshire Superior Court.[18]

- ACE handwritten notes concerning discussions with counsel for insurers and/or insurers' representatives regarding action captioned *Irving Oil Limited, et al. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, et al., State of New Hampshire Superior Court.*[19]

- February 6, 2006, joint defense communication between Anne Gray of ACE and counsel for insurers' and/ or insurers' representatives regarding action captioned *Irving Oil Limited, et al. v. Nat'l union Fire Ins. Co. of Pittsburgh, PA, et al., State of New Hampshire Superior Court.*[20]

- March 1, 2006, e-mail correspondence between Anne Gray of ACE and counsel for insurers' and/ or insurers' representatives regarding action captioned *Irving Oil Limited, et al. v. Nat'l union Fire Ins. Co. of Pittsburgh, PA, et al., State of New Hampshire Superior Court.*[21]

- Correspondence with ACE's reinsurer that post-dates Irving's filing suit against ACE and concerns Irving's suit against ACE.[22]

- Pricing and Rating Information[23]

---

[17] *See* (Def.'s Amd. Priv. Log. 8.)

[18] *See* (Def.'s Amd. Priv. Log. 22.)

[19] *See Id.*

[20] *See* (Def.'s Amd. Priv. Log. 8-9.)

[21] *See* (Def.'s Amd. Priv. Log. 11.)

[22] *See* (Amd. Priv. Log 25.)

[23] *See* (Amd. Priv. Log 1, 5.)

20

- Articles and publications on MTBE obtained and printed by ACE representative.[24]

The court DENIES Plaintiffs' motion as to the following documents:

- E-mail correspondence between Kara Fagan (of ACE) and outside counsel retained to represent and advise ACE with respect to coverage issues related to MTBE suits.[25]

The court will set up a conference call with counsel to discuss the logistics for production of redacted documents. The court would like to also discuss with counsel the status of certain documents referred to Plaintiff's motion that were not submitted for in camera review (including non-MTBE claims files and underwriting files) to ensure that this order has addressed all of the disputed documents.

Pursuant to M.R. Civ. P. 79(a), the clerk is hereby directed to incorporate this order into

the docket by reference.

Dated: March 17, 2015

Justice, Business & Consumer Court

---

[24] *See* (Def.'s Amd. Priv. Log 23.)
[25] Said e-mails are dated: August 7, 2007; August 21, 2007; February 7, 2008; February 11, 2008; February 14, 2008; and April 2, 2008.

21

**Irving Oil Limited, and Highlands Fuel Delivery, LLC v. Ace INA Insurance**
**BCD-CV-2009-35**

**Irving Oil Limited and**
**Highland Fuel Delivery, LLC**
**    Plaintiff**

Counsel:                          John Ciraldo, Esq.
                                  David McConnell, Esq.
                                  Jennifer Pincus, Esq.
                                  One Canal Plaza, Suite 900
                                  PO Box 426
                                  Portland, ME 04112-0426

**Ace INA Insurance**
**    Defendant**

Counsel:                          Harold Friedman, Esq.
                                  Brett Leland, Esq.
                                  One Portland Square
                                  PO Box 586
                                  Portland, ME 04112-0586
                                          AND
                                  Laurence Leavitt, Esq.
                                  25 Pearl Street
                                  PO Box 4726
                                  Portland, ME 04112-4726