IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 20, 2004 Session

## CLIFFORD MICHAEL JOHNSON v. NISSAN NORTH AMERICA, INC.

**Extraordinary Appeal from the Circuit Court for Rutherford County**
**No. 47732     J. S. Steve Daniel, Judge**

**No. M2003-01165-COA-R10-CV - Filed May 26, 2004**

Former employee of Nissan North America, Inc. filed this action against Nissan alleging retaliatory discharge following his filing of a workers' compensation claim. A discovery dispute ensued wherein Nissan objected claiming the requests were not relevant and that it would violate the Americans with Disabilities Act if it provided the discovery. The trial court modified the discovery and ordered Nissan to: 1) list every employee terminated between August 2000 and January 2002 and the reason for the termination; 2) identify which of these employees filed workers' compensation claims or received workers' compensation benefits within one year preceding their respective termination; and 3) identify each employee that Nissan or its agents either conducted surveillance on or requested that surveillance be conducted on between August 2000 and January 2002. We reverse, finding that the plaintiff failed to make a compelling showing of relevance and failed to establish that the value of the discovery sought, which pertained to information contained in the personnel and medical records of current and former employees of Nissan, outweighed the privacy interests of those individuals who were not parties to this action.

**Tenn. R. App. P. 10 Appeal by Permission; Judgment of the Circuit Court is Reversed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, P.J., M.S., and WILLIAM B. CAIN, J., joined.

Larry G. Trail and Van A. French, Murfreesboro, Tennessee, for the appellant, Nissan North America, Inc.

Joy L. Davis, Franklin, Tennessee, for the appellee, Clifford Michael Johnson.

### OPINION

This is a Tenn. R. App. 10 extraordinary appeal which arises from a dispute concerning the scope of discovery. Clifford Michael Johnson (Johnson), a former employee of Nissan North America, Inc. (Nissan), filed a complaint for retaliatory discharge against Nissan alleging that he was

wrongfully terminated in retaliation for filing a workers' compensation claim. Johnson submitted interrogatories to which Nissan objected to four.[1] Johnson filed a motion to compel discovery. After a hearing, the trial judge ruled that Nissan did not have to answer interrogatory 9, modified interrogatories 6 and 8, reduced the time frame by changing the dates of "January 1, 2000 and January 1, 2003" to "August 2000 and January 2002," but otherwise ruled that interrogatories 6, 7, and 8 must be answered as modified. Specifically, the trial judge ordered Nissan to:

1) list every employee terminated between August 2000 and January 2002 and the reason for the termination;

2) identify which of these employees filed workers' compensation claims or received workers' compensation benefits within one year preceding their respective termination; and

3) identify each employee that employer or its agents either conducted surveillance on or requested that surveillance be conducted on between August 2000 and January 2002.

Nissan raised two principal objections. First, Nissan argues that the requests are not relevant to Johnson's claim of retaliatory termination, relying on Tenn. R. Civ. P. 26 which only authorizes discovery that is "relevant to the subject matter involved in the pending action." Johnson's claim, Nissan asserts, is individual in nature and not on behalf of any purported class, not a claim that he was treated differently than other Nissan employees in a similar situation, or that the company's rules

---

[1]Nissan objected to the following four interrogatories:

6. List all employees terminated since between January 1, 2000 and January 1, 2003, and the reason for said termination.

7. Identify which, if any, of said employees in your answer to Interrogatory No. 6, which had filed a worker's [sic] compensation claim or received worker's [sic] compensation benefits within the period of one year preceding their respective termination.

8. List each employee in which you, your attorney and/or your agents have conducted or requested surveillance between January 1, 2000 and January 1, 2003. With regard to each employee, list the dates surveillance was performed, the name of the investigator, whether any photographs or videotapes were conducted or taken during the surveillance, the location of any such photographs, videotapes, and reports, or other documents that were created or made as a result of any surveillance.

9. Identify which, if any, of the employees listed in answer to Interrogatory No. 8 above had ever filed a worker's [sic] compensation claim and for each identify the following:
   a. Date of hire;
   b. Date and type of injury;
   c. Date of last medical payment;
   d. Total amounts paid to date and in reserve for each claim;
   e. Status of claim (open, closed, settled, pending settlement, etc.); and
   f. Amounts of payments to employee, if settled and date of settlement.

or procedures had a "disproportionately adverse effect" on other employees who filed a workers' compensation claim. Nissan submits that the issue in this case is whether Johnson was terminated for violating work restrictions or whether the reasons given were simply pretextual. As such, Nissan contends its reasons for termination of other employees or whether surveillance was conducted are irrelevant to Johnson's claim. Nissan relies on *Steinkerchner v. Provident Life & Accident Insurance Co.*, No. 01-A-01-9910-CH-00039, 1999 WL 734545 (Tenn. Ct. App. Sep. 22, 1999) wherein this court held that if the discovery request is broad and based upon the belief that it will lead to the discovery of admissible evidence, the justification for the broad discovery must be more than mere accusations and suspicion. Thus, Nissan argues that mere speculative and conclusory allegations that it targeted other employees for termination who filed workers' compensation claims does not justify the broad discovery it is compelled to provide.

Second, Nissan objected arguing that it would be violating the Americans with Disabilities Act of 1990 (ADA) if it provides the discovery, which may subject Nissan to lawsuits by current and former employee whose information concerning medical benefits or workers' compensation claims is released for such information is confidential and Nissan, as an employer, has a duty to keep it confidential. While there are exceptions to the confidentiality requirements, Nissan insists the discovery at issue does not qualify as an exception.

Johnson countered arguing that *Steinkerchner* is distinguishable. Johnson asserts that his allegations of bad faith are not speculative as they were in *Steinkerchner* because Chancellor Corlew, when ruling on a motion in Johnson's underlying workers' compensation case, held that Nissan acted in bad faith when dealing with Johnson.[2] Thus, Johnson argues that he should be given more latitude with respect to discovery. Moreover, Johnson asserts that to effectively prepare his case he must be able to discover how Nissan's policy has been applied to other employees, the type of employee targeted, Nissan's motivation for termination, and the number of employees terminated for cause as opposed to other terminations.

Standard of Review

Discovery disputes address themselves to a trial court's discretion, *Benton v. Snyder,* 825 S.W.2d 409, 416 (Tenn.1992); *Payne v. Ramsey,* 591 S.W.2d 434, 436 (Tenn.1979); *Harrison v. Greeneville Ready-Mix, Inc.,* 220 Tenn. 293, 302-03, 417 S.W.2d 48, 52 (1967). Accordingly, we use the "abuse of discretion" standard of review.

While the "abuse of discretion" standard limits the scope of our review of discretionary decisions, it does not immunize these decisions completely from appellate review. *Duncan v. Duncan,* 789 S.W.2d 557, 561 (Tenn. Ct. App.1990).

---

[2] The ruling referenced by Johnson is found in the opinion letter of Chancellor Robert E. Corlew dated December 17, 2002. Chancellor Corlew presided over Johnson's workers' compensation claim, but not the instant lawsuit.

Even though it prevents us from second-guessing the trial court, *White v. Vanderbilt Univ.,* 21 S.W.3d 215, 223 (Tenn. Ct. App.1999), or from substituting our discretion for the trial court's discretion, *Myint v. Allstate Ins. Co.,* 970 S.W.2d 920, 927 (Tenn.1998); *State ex rel. Vaughn v. Kaatrude,* 21 S.W.3d 244, 248 (Tenn.Ct.App.2000), it does not prevent us from examining the trial court's decision to determine whether it has taken the applicable law and the relevant facts into account. *Ballard v. Herzke,* 924 S.W.2d 652, 661 (Tenn.1996). We will not hesitate to conclude that a trial court "abused its discretion" when the court has applied an incorrect legal standard, has reached a decision that is illogical, has based its decision on a clearly erroneous assessment of the evidence, or has employed reasoning that causes an injustice to the complaining party. *Clinard v. Blackwood,* 46 S.W.3d 177, 182 (Tenn.2001); *Buckner v. Hassell,* 44 S.W.3d 78, 83 (Tenn. Ct. App.2000); *In re Paul's Bonding Co.,* 62 S.W.3d 187, 194 (Tenn. Crim. App.2001); *Overstreet v. Shoney's, Inc.,* 4 S.W.3d 694, 709 (Tenn. Ct. App.1999).

*Boyd v. Comdata Network, Inc.* 88 S.W.3d 203, 211-212 (Tenn. Ct. App. 2002).

We review the trial court's underlying factual findings using the preponderance of the evidence standard in Tenn. R. App. P. 13(d); however, we review the trial court's legal determinations *de novo* without a presumption of correctness. *Brown v. Birman Managed Care, Inc.,* 42 S.W.3d 62, 66 (Tenn.2001); *Burlew v. Burlew,* 40 S.W.3d 465, 470 (Tenn.2001). A trial court "abuses its discretion" when it makes an error of law. *Koon v. United States,* 518 U.S. 81, 100, 116 S.Ct. 2035, 2047, 135 L.Ed.2d 392 (1996).

Analysis

Discovery rules are accorded broad and liberal treatment for mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation, *Hickman v. Taylor* 329 U.S. 495, 507, 67 S.Ct. 385, 392 (U.S. 1947); however, though the scope of discovery is broad, it does have limits. *Miller v. Doctor's General Hospital*, 76 F.R.D. 136, 139 (W.D. Okl. 1977). "The basic positive touchstone is relevance, including the reasonable possibility that the information sought would lead to admissible evidence." *Miller* at 139. The Tennessee Rules of Civil Procedure strike a balance between two important policies. "The first, and perhaps more important, policy is that discovery should enable the parties and the courts to seek the truth so that disputes will be decided by facts rather than by legal maneuvering." (citations omitted) *White v. Vanderbilt University*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999). "The second policy is that the discovery rules should not permit less diligent lawyers to benefit from the work of their more diligent opponents." (citations omitted) *Id.* at 223.

Analyzing whether a discovery request is proper requires the balancing of numerous considerations. "There is no sharp line of demarcation which separates the field in which discovery may be freely pursued from that in which it is forbidden." Cyc. Fed Proc. § 25.34 3rd Ed. (2001).

These considerations include, "relevancy or reasonable possibility of information leading to discovery of admissible evidence; privilege; protection of privacy, property and secret matters; and protection of parties or persons from annoyance, embarrassment, oppression, or undue burden or expense." *Id*. at § 25.34.

A typical analysis involves whether the discovery is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party.[3] However, in this case we not only have the relevancy analysis; we also have confidentiality issues along with a balancing of interests between the rights of the plaintiff, who seeks information to prove his case, and the privacy rights of non-parties, who are current and former employees of Nissan. We begin our analysis with an assessment of the confidentiality issue and the privacy interests of the non-parties.

Nissan insists that the order of the circuit court "requires Nissan to act in a manner violative of federal law, in particular, the [ADA]" for it, as an employer, is under an obligation to keep employee personnel and medical records confidential. Nissan specifically relies on an informal opinion of the Equal Employment Opportunities Commission (EEOC) that provides, "[T]he ADA's confidentiality provisions concerning employee medical records are absolute." It also provides, "[I]n a state civil action, an employer could run afoul of the ADA if it permitted the discovery of an employee's medical file that was being maintained pursuant to the statute." Further it states, "[A]n employer will risk being sued under the ADA by an employee whose medical records it fails to keep confidential. . . ." 8 NDLR ¶ 395 (Feb. 12 1996).

Though valid to an extent, Nissan's reliance on the ADA is overstated for the confidentiality requirement referenced above only pertains to persons with "disabilities" as defined under the ADA and only to employees' medical files that are maintained pursuant to the ADA. Disability is defined under the ADA as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C.A. §12102(2)(A). The ADA confidentiality requirements apply to all medical records and tests "covered by the ADA." However, that does not mean that the ADA confidentiality requirements apply to any and all medical records and tests of employees; it only applies to those which are covered by the ADA. The informal EEOC opinion relied on by Nissan confirms this dichotomy. "The ADA . . . makes a distinction between an employee's non-medical personnel file and the employee's medical file. An employer is precluded

---

[3]"The boundaries defining information that is relevant to the subject matter involved in the action are necessarily vague and it is practically impossible to state a general rule by which they can be drawn." Wright, Miller & Marcus, *Federal Practice and Procedure: Civil 2d* § 2008, p. 107 (1994). Relevancy is to be construed liberally and with common sense instead of "narrow legalisms." *Id*. at § 2008, p. 107. While "a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action," discovery of information that has no conceivable bearing on the case should not be allowed. *Id*. at § 2008, p. 107,108. "Whether information sought is reasonably calculated to lead to the discovery of admissible evidence must, of course, be determined on a case-by-case basis." Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* § 8-1(f), p. 497 (1999).

from placing in an employee's 'standard' personnel file any medical records covered by the ADA. The employee's separately maintained medical file is subject to the confidentiality requirements of the ADA." 8 NDLR ¶ 395 (Feb. 12 1996). The EEOC informal opinion further states that the confidentiality provisions apply "assuming the records are being held by an employer in accordance with the ADA." *Id.,* ¶ 395. As noted by the EEOC, a file maintained in accordance with the ADA is not the same as the so-called "standard" personnel file. Accordingly, to the extent Nissan has maintained files in accordance with the ADA, which by definition limits the files to employees who meet the ADA definition of "disabled," then Nissan is correct in its assertion that the ADA's confidentiality provisions concerning those employees' medical records apply.

The fact that the ADA statutory confidentiality provisions are limited does not mean that all other medical and personnel records of employees are unprotected. To the contrary, courts have repeatedly limited discovery of such records and information on the basis of privacy interests. Generally stated, discovery of personnel records requires a compelling showing of relevance because of the privacy interests involved. *Miller v. Federal Express Corp.*, 186 F.R.D. 376, 384 (W.D. Tenn. 1999). Even where company records are shown to be relevant,

> Courts have been reluctant to permit discovery, when the requested disclosures would intrude upon the privacy interests of other, non-party employees. These Courts have concluded that the personnel files of an entire class of employees should not be produced, even in an employment discrimination proceeding, absent a compelling showing of relevance. See, e.g., *Gehring v. Case Corp.,* 43 F.3d 340, 342- 43 (7th Cir.1994) (privacy interests was proper basis upon which to disallow counsel from "root[ing] through the personnel files."), cert. denied, 515 U.S. 1159, 115 S.Ct. 2612, 132 L.Ed.2d 855 (1995). As a consequence, a party seeking the discovery of personnel information must demonstrate, notwithstanding the breadth of discovery, that the value of the information sought would outweigh the privacy interests of the affected individuals. See, *Whittingham v. Amherst Coll.,* supra at 127-28; *Miles v. Boeing Co.,* 154 F.R.D. at 115. On the other hand, "[i]n Title VII litigation, in which plaintiffs are required to demonstrate pretext, courts have customarily allowed a wide discovery of personnel files." *Coughlin v. Lee,* supra at 1159, citing *Trevino v. Celanese Corp.,* 701 F.2d 397, 405-06 (5th Cir.1983); *Burns v. Thiokol Chem. Corp.,* 483 F.2d 300, 303-07 (5th Cir.1973); *Weahkee v. Norton,* 621 F.2d 1080, 1082 (10th Cir.1980); *Rich v. Martin Marietta Corp.,* 522 F.2d 333, 344-45 (10th Cir.1975); *Marshall v. Westinghouse Elec. Corp.,* 576 F.2d 588, 592 (5th Cir.1978). We think the proper balance, between the privacy interests of non-party third persons, and the discovery interests of a party litigant, is to assure that only those portions of the pertinent personnel files, which are clearly relevant to the parties' claims, are open to disclosure and, then, subject to an appropriate Confidentiality Order as the circumstances require.

*Onwuka v. Federal Express Corporation,* 178 F.R.D. 508, 517 (D. Minn. 1997).

Whether the discovery at issue is relevant includes an assessment of whether the others are similarly situated to the party seeking the discovery. *Allen v. Howmedica Leibinger*, 190 F.R.D. 518, 524 (W.D. Tenn. 1999). In *Miller v. Federal Express Corp.,* 186 F.R.D. 376 (W.D. Tenn., 1999) the plaintiff charged that she was discriminated against based on her race. Specifically, she alleged that "she was disciplined more harshly than other similarly situated white managers." *Id.* at 381. The court examined three interrogatories to determine if the plaintiff was similarly situated to other employees whose information she had requested:

> Interrogatory 17 asks defendant to "identify all managers and supervisors at the Memphis Hub who, since January 1, 1993, have received any form of discipline related to either 'conduct' or 'employee relations' issues." This interrogatory also asks that defendant provide the name, race, and job title of each manager/supervisor, the date of disciplinary action, a description of the action taken, and whether any appeal was filed and the final disposition of any such appeal. Interrogatory 19 asks defendant to "identify each and every person in management at the Memphis Hub who filed internal EEO grievances and who subsequently received favorable outcomes to said since January 1, 1993." Interrogatory 20 asks defendant to "identify each and every person listed in Interrogatory No. 19 who have (sic) been promoted since or after the date of filing an internal EEO grievance."

*Id.,* 186 F.R.D. at 383.

*Miller* held that the interrogatories were over broad, but could lead to the discovery of admissible evidence because the discovery may identify a smaller set of managers within the over broad request that were in fact similarly situated to the plaintiff. That court's analysis provides guidance to finding a balance between the broad scope of discovery and the need to protect against over broad requests.

> In this Title VII disparate treatment case, information concerning the treatment of comparable employees is doubtlessly relevant to a plaintiff's claim that she received harsher discipline on account of her race. However, for an employee to be considered comparable or "similarly situated" to the plaintiff, "the plaintiff and the employee must be similar in 'all of the relevant aspects.' " *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 351 (6th Cir.1998). In the context of an allegation of disciplinary discrimination, the comparables to be similarly situated "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992). This is not to say, however, that another employee's situation must be identical to serve as a comparable. *Ercegovich*, 154 F.3d at 353.

Plaintiff is not similarly situated to all management-level employees at the Hub who were themselves subject to discipline for "conduct" or "employee relations" issues or who filed internal EEO grievances. In this case, only those management-level employees at the Hub who received disciplinary sanctions as a result of violations of the "Acceptable Conduct Policy/leadership failure" and who later failed to apologize for their behavior and failed to cooperate with defendant's internal investigation would be "similar in 'all of the relevant aspects' " to plaintiff for purposes of admissibility at trial. Similarly, management-level employees sanctioned for disciplinary reasons prior to November 30, 1995 would not be similarly situated to plaintiff because they were not subject to the disciplinary standard in place after circulation of the Logue/Willoughby memorandum. Consequently, Interrogatories 17, 19, and 20, as currently formulated, are over broad.

Although over broad, these interrogatories arguably could lead to the discovery of other admissible evidence by revealing a smaller set of managers who were disciplined after November 30, 1995 for leadership failure and who also failed to apologize and to cooperate in the investigation. Nevertheless, the need for broad discovery should not necessitate unreasonably broad discovery requests. *Cf. Scales v. J.C. Bradford and Co.*, 925 F.2d 901, 906 (6th Cir.1991) (noting in a Title VII disparate treatment case that the "desire to allow broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights" of the parties). Plaintiff's need for relevant disciplinary information can be adequately addressed by limiting Interrogatories 17, 19, and 20 to those managers in Director Henry Bartosch's area, if any, who were disciplined between November 30, 1995 and February 14, 1997 for "violation of the Acceptable Conduct Policy/leadership failure." Although these individuals may not be "similar in all relevant respects" such that information concerning them would be admissible at trial, the information about managers who were disciplined for leadership failure could lead to additional information about their cooperation during the investigative process which may ultimately lead to admissible information.

*Id.,* 186 F.R.D. 383-384.

In *Scales v. J.C. Bradford and Co.*, 925 F.2d 901, 906-7 (6th Cir.1991), Ms. Scales contended that the district court's ruling limiting her discovery made it impossible for her to prove her Title VII gender discrimination claim. While holding that information concerning an employer's general employment practices is relevant even to a Title VII individual disparate treatment claim and that a plaintiff should not normally be denied the information necessary to establish that claim, the court concluded that this desire to allow broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant. *Id.* at 906, *citing Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir.1983). The focus of Ms. Scales' complaint was on the treatment she received from J.C. Bradford while working in its municipal bond department in

Nashville. Finding that the employment decisions were made locally, the *Scales* court concluded that discovery should be limited to the unit in Nashville and denied Ms. Scales' request to discover J.C. Bradford's practices in other units and other regions. *Id*. at 906-7.

In *Steinkerchner v. Provident Life & Accident Insurance*, No. 01-A-01-9910-CH-00039, 1999 WL 734545, *3 (Tenn. Ct. App. Sept. 22, 1999), an insured requested the identity of "every Tennessee resident" to whom Provident had issued a disability policy, upon which a claim for disability benefits has been made and subsequently denied in whole or in part. The court found Steinkerchner's basis for the discovery to be "speculative" and therefore insufficient. The court reasoned:

> Although the complaint makes vague allegations that the denial of benefits was part of a course of conduct, at his deposition Dr. Steinkerchner admitted that he had no information about other policyholders' dissatisfaction with Provident. Dr. Steinkerchner's speculative accusations about a course of conduct do not suffice to demonstrate the relevance of Provident's handling of other claims. He has been unable to identify the particular course of conduct he alleges exists, merely itemizing actions taken in handling of his claim. Thus, we find that the requested information is unlikely to lead to relevant evidence.

*Steinkerchner v. Provident Life & Accident Insurance Co.*, No. 01-A-01-9910-CH-00039, 1999 WL 734545, *3 (Tenn. Ct. App. Sept. 22, 1999).[4]

The compelling reason offered by Johnson is that information about "every employee" terminated by Nissan over a sixteen month period is necessary to show how Nissan's work restrictions policy is enforced on employees whose illness is not the result of a work injury. He contends that such information is material to the interpretation of the work restriction policy and whether the policy is enforced fairly.[5] We find Johnson's justification to compel discovery most

---

[4]The *Steinkerchner* court also concluded that the issues in that case were limited to Provident's handling of Dr. Steinkerchner's claim for employment disability insurance benefits and to the adequacy of Provident's reasons for denying the claim. *Id*. at *3. The court further found that Provident's conduct regarding the unique insurance claims of others was not relevant to whether it properly handled the claim at issue. *Id*. at *3. We need not and do not make a determination whether Johnson's claim is similarly limited or whether Nissan's surveillance of other employees and/or termination of other employees is relevant or reasonably calculated to lead to the discovery of admissible evidence. Our ruling is based upon the failure of Johnson to establish compelling evidence to justify the discovery of confidential information of non-party employees of Nissan. Accordingly, we do not preclude discovery in the event Johnson, through other means of discovery can justify such discovery.

[5]A cause of action for retaliatory discharge pertaining to the filing of a workers' compensation claim consists of four elements: 1) the plaintiff was an employee of defendant at the time of the injury; 2) the plaintiff made a claim for workers' compensation benefits; 3) the defendant terminated the plaintiff's employment; and 4) the claim for workers' compensation benefits was a substantial factor in defendant's motivation to terminate the plaintiff's employment. *Anderson v. Standard Cash Register*, 857 S.W.2d 555, 558 ( Tenn. 1993). The plaintiff has the burden of proving a

tenuous because he merely alleges, "*It is strongly suspected by Plaintiff* that other employees were similarly targeted by Nissan, and that records kept by Nissan in the normal course of business will confirm that a correlation exists between the employees upon which surveillance was ordered and the company's records regarding payment of worker's [sic] compensation claims." (emphasis added) Johnson similarly avers in his brief that he has "*limited knowledge of dozens of other employees that were similarly targeted* during the month of his termination in January 2002, all of which had filed workers' compensation claims and were working within some type of work related medical restrictions" (emphasis added). Due to the fact that the identity of the alleged similarly targeted individuals and the facts which underlie their situations remain a secret within the exclusive knowledge of the plaintiff, which prevents us from making our own determination of the validity of his conclusions, we view Johnson's averments as little more than conclusory speculation.

Our analysis leads us to conclude that the scope of discovery is over broad, though as in *Miller v. Federal Express Corp.* we acknowledge that some of the information Johnson seeks to discover may have relevance to his case and/or may lead to the discovery of admissible evidence; yet, his basis for the discovery is merely what is "*strongly suspected*" by Johnson, which is speculative and conclusory. Furthermore, Johnson has failed to make a compelling showing of relevance and has failed to establish that the value of the information sought would outweigh the privacy interests of the affected individuals to justify discovery of the personnel and medical records of non-parties. As stated in *Gehring v. Case Corp.,* 43 F.3d 340, 342-3 (7th Cir.1994), the privacy interests of non-parties is a proper basis upon which to disallow counsel from rooting through personnel files of non-parties.

Therefore, we vacate the trial court's order of April 9, 2003 compelling discovery and remand this matter to the trial court for further proceedings consistent with this opinion.

Costs are assessed against Appellee, Clifford Michael Johnson.

_____
FRANK G. CLEMENT, JR., JUDGE

causal link between the claim for benefits and the termination. *Id*. at 558-9.