FILED

October 5, 2017

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 12:57 P.M.



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Willie Guinn and Judy Guinn, ) | Docket No. 2017-02-0207 |
| as representatives of the Estate of ) | |
| Shannon Scott Guinn, Decedent ) | State File No. 97502-2016 |
| ) | |
| v. ) | |
| ) | |
| Barnard Roofing Company, Inc., et al. ) | |
| ) | |
| ) | |
| Appeal from the Court of Workers' ) | |
| Compensation Claims ) | |
| Brian K. Addington, Judge ) | |

---

**Affirmed and Remanded – Filed October 5, 2017**

---

In this interlocutory appeal, the employer asserts the trial court erred in denying its motion for an order compelling the representatives of the employee's estate to sign a medical release allowing a second toxicology screening of the decedent's blood sample. Following a hearing, the trial court concluded the employer had not shown "good cause" supporting its motion because it offered no evidence that the laboratory holding the sample required a medical release or a court order to perform a second toxicology screening. Finding the trial court did not abuse its discretion in denying the employer's motion, we affirm the trial court's determination and remand the case for additional proceedings.

Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Presiding Judge Marshall L. Davidson, III, and Judge David F. Hensley joined.

Jeffery Foster, Jackson, Tennessee, for the employer-appellant, Barnard Roofing Company, Inc.

Gregory Haden, Jackson, Tennessee, for the appellees, Willie Guinn and Judy Guinn, as representatives of the Estate of Shannon Scott Guinn, Decedent

**Factual and Procedural Background**

On December 15, 2016, Shannon Guinn ("Employee") suffered a tragic fall while working for Barnard Roofing Co., Inc. ("Employer"). He had been assisting co-workers on a roof when he stepped through a skylight hole and fell approximately 25-30 feet onto concrete. He was hospitalized and underwent emergency surgery to treat a traumatic brain injury, but he was unable to recover. He passed away on December 24, 2016.

During Employee's hospital stay, medical personnel obtained a sample of his blood. On December 28, 2016, four days after Employee's death, the sample was received by Aegis Sciences Corporation ("Aegis"), which performed a toxicology screening.[1] In a January 3, 2017 report, Aegis indicated the result was positive for "Carboxy-THC" at an amount of "24 ng/ml." Employer then sought to have the sample re-tested due to its belief that Employee must have used marijuana prior to the accident because "Carboxy-THC" is an inactive ingredient in marijuana. Representatives of Employee's estate declined to sign a release presented by Employer for a second toxicology screening for a number of reasons, including that the initial toxicology report noted the specimen's "security seal [was] missing" and the level of "Carboxy-THC" noted on the result was below threshold minimums supporting a "confirmation test" as set forth in Tenn. Comp. R. & Regs. 0800-20-12-.03(17) (2012).

Thereafter, Employer filed a motion asking the trial court for an order compelling the representatives of Employee's estate to sign a medical release allowing a subsequent toxicology screening of Employee's blood sample. Following an expedited hearing, the trial court denied the motion, concluding Employer had not shown "good cause" supporting its motion because it offered no evidence that the laboratory holding the sample required a release or court order to conduct additional testing. Employer has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2016) ("There shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise."). However, we review questions of law *de novo* with no presumption of correctness. *See Am. Mining Ins. Co. v. Campbell*, No. M2015-01478-SC-R3-WC, 2016 Tenn. LEXIS 907, at *18 (Tenn. Workers' Comp. Panel Dec. 9, 2016) ("A trial court's conclusions of law are reviewed *de novo* upon the record with no presumption of correctness."). Moreover, the interpretation and application of

---

[1] The record is unclear as to who ordered this first toxicology screening, although the Aegis report indicates it was a "post-accident" test.

statutes and regulations concerns issues of law, which we review *de novo* with no presumption of correctness afforded to the trial court's findings. *See Seiber v. Reeves Logging*, 284 S.W.3d 294, 298 (Tenn. 2009); *Hadzic v. Averitt Express*, No. 2014-02-0064, 2015 TN Wrk. Comp. App Bd. LEXIS 14, at *9 (Tenn. Workers' Comp. App. Bd. May 18, 2015).

A trial court's decision to grant or deny a discovery motion is reviewed under an abuse of discretion standard. *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004). This standard "contemplates that before reversal the record must show that a judge 'applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" *Hubbard v. Sherman-Dixie Concrete, Indus.*, No. E2010-02219-WC-R3-WC, 2011 Tenn. LEXIS 965, at *11 (Tenn. Workers' Comp. Panel Oct. 18, 2011) (quoting *State v. Farrell*, 277 S.W.3d 372, 378 (Tenn. 2009)).

## Analysis

The issue as stated by Employer is "whether the [trial court] erred in denying Defendants' Motion to Compel a drug screen on the blood sample of the Employee." In its brief, Employer correctly notes that it has the burden of proving its defense based on the alleged intoxication of Employee. Tenn. Code Ann. § 50-6-110(a)(3) (2016).[2]

In considering the issue raised by Employer, we must turn to the statutes and rules governing drug testing and the Tennessee Drug-Free Workplace Program. First, the record in this case is unclear as to whether the trial court considered Employer to be a certified drug-free workplace. In the initial dispute certification notice, Employer asserted it was not a certified drug-free workplace. In a subsequent brief, Employer argued that the rules governing drug testing in the Tennessee Drug-Free Workplace Program were inapplicable in this case, since it has "made no assertion [it] was qualified for the drug-free workplace program." Thereafter, Employee filed copies of a "Tennessee Drug-Free Workplace Application," purportedly submitted by Employer to the state, along with a Memorandum from the Tennessee Drug-Free Workplace Program accepting Employer's application for participation in the program. Thus, it remains

---

[2] Employer also cites certain statutes peripheral to the issue at hand. First, an injured worker must submit to a physical examination at the request of the employer at "all reasonable times." Tenn. Code Ann. § 50-6-204(d)(1). Second, an employer may, under certain circumstances, demand an autopsy of a worker when the cause of death is "obscure or [] disputed." Tenn. Code Ann. § 50-6-204(e). Third, an employer has reasonable access to the medical records of an employee who seeks workers' compensation benefits. Tenn. Code Ann. § 50-6-204(a)(2)(A). However, Employer in this case has not demanded a physical examination of the deceased worker, has not sought an autopsy, and is not seeking access to medical records. Thus, none of the statutes cited by Employer addresses its purported right to demand estate representatives to sign a release for medical testing of a blood sample of the deceased employee.

unclear whether Employer is a "covered employer" as that term is defined in the statutes governing the Drug-Free Workplace Program.

Consequently, before considering the drug-testing procedures as set forth in the Drug-Free Workplace Program, we must look to other statutes or rules that could support Employer's motion. In general, "[d]iscovery rules are accorded broad and liberal treatment [as] mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Johnson*, 146 S.W.3d at 605 (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). A request for discovery need only show "that the information sought would lead to admissible evidence." *Id.* "The first, and perhaps most important, policy is that discovery should enable the parties and the courts to seek the truth so that disputes will be decided by facts rather than by legal maneuvering." *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).

Rule 35 of the Tennessee Rules of Civil Procedure governs requests for a physical or mental examination of a person. In general "[w]hen the mental or physical condition (*including the blood group*) of a party, or of a person in custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical examination by a suitably licensed or certified examiner." Tenn. R. Civ. P. 35 (emphasis added). Rule 35 contemplates at least one form of blood testing as coming within the rule governing physical examinations. Therefore, if a trial court determines that the physical condition of an injured worker is "in controversy," it has the discretion to order blood testing as part of a Rule 35 physical examination.

Moreover, assuming for purposes of this discussion that Employer and Employee are subject to the statutes and rules governing Tennessee's Drug-Free Workplace Program, we must consider statutory and regulatory language pertinent to that program. The statute governing Tennessee's Drug-Free Workplace Program defines "confirmation test" as follows:

> "Confirmation test," "confirmed test" or "confirmed drug or alcohol test" means a second analytical procedure used to identify the presence of a specific drug or alcohol or metabolite in a specimen, which test must be different in scientific principle from that of the initial test procedure and must be capable of providing requisite specificity, sensitivity and quantitative accuracy."

Tenn. Code Ann. § 50-9-103(4) (2016). Section 50-9-104 provides that a "covered employer may test an employee for any drug defined in § 50-9-103, and at any time set out in § 50-9-106." Tenn. Code Ann. § 50-9-104(a) (2016). Thereafter, the statute authorizes a covered employer to conduct "post-accident testing" "after an accident that results in an injury." Tenn. Code Ann. § 50-9-106(a)(5) (2016). Finally, the law requires a covered employer to "use chain-of-custody procedures established by regulations of the

4

United States department of transportation or such other recognized authority approved by rule . . . governing drug testing." Tenn. Code Ann. § 50-9-107(c) (2016).

The rules pertaining to Tennessee's Drug-Free Workplace Program also contain relevant provisions. First, "nothing in these rules shall be construed as authorizing any employer to test any employee or applicant for alcohol or drugs in any manner inconsistent with federal constitutional or statutory requirements." Tenn. Comp. R. & Regs. 0800-02-12-.02(4) (2012).

Second, a covered employer is *required* to conduct post-accident drug testing. Tenn. Comp. R. & Regs. 0800-02-12-.05(5). Moreover, "[s]pecimens shall be obtained at the treating facility or a designated collection site under the procedures set forth in these rules and transported to an approved testing laboratory." Tenn. Comp. R. & Regs. 0800-02-12-.05(5)(a). The post-accident drug test must be comprised of an "initial screen," which is an "immunoassay," and, if "identified as positive on the initial test," a "confirmation test," which is to use "gas chromatography/mass spectrometry (GC/MS)." Tenn. Comp. R. & Regs. 0800-02-12-.07(2) & (3). A confirmation test is called for if the initial screening is "positive," but the regulations are silent as to the meaning of "positive." A test result is considered "presumptively positive" if the detected levels of a particular drug exceed the prohibited levels identified in Tenn. Comp. R. & Regs. 0800-02-12-.03(17). For marijuana, the "presumptively positive" level for an initial screening is 50 ng/ml and the "presumptively positive" level for a confirmation screening is 15 ng/ml. *Id.*

In the present case, a blood specimen of the injured worker was received by Aegis Corporation on December 28, 2016, thirteen days after the work accident. The record contains no evidence that the testing facility required a medical release from the injured worker or his representative prior to conducting the initial screening. The January 3, 2017 lab report does not indicate the date the blood sample was collected from the injured worker. The "result" indicates that the test for "Carboxy-THC" was "positive" at a level of 24 ng/ml. This result is below the threshold set by regulation to be considered "presumptively positive" if the result was from an "initial" immunoassay. Moreover, the lab report indicates that the "specimen security seal is missing."

The trial court concluded that Employer had failed to show good cause as to why its motion to compel should be granted. We agree. Based on our review of the record, the trial court was not presented with evidence that the January 3, 2017 laboratory report constituted a properly conducted "initial screen" as described in Tenn. Comp. R. & Regs. 0800-02-12-07(2). Employer presented no evidence that chain-of-custody procedures were followed in accordance with Tennessee Code Annotated section 50-6-107(c), especially in light of the fact that the laboratory report on which it relies stated that the specimen's security seal was missing. Employer presented no evidence as to when the blood sample was collected from Employee.

Moreover, although the laboratory identified a "positive" result for "Carboxy-THC," which Employer asserted was an inactive ingredient in marijuana, Employer presented no evidence that the test result was "positive" for purposes of obtaining a confirmation test, especially since the result was below the threshold to be considered "presumptively positive" in accordance with Tenn. Comp. R. & Regs. 0800-02-12-.03(17). In addition, the record contains conflicting evidence concerning whether Employer is a certified drug-free workplace under Tennessee law and/or is a "covered employer" for purposes of the statutes and rules governing drug testing under this program.

Finally, Employer presented no evidence that a medical release or court order is needed for the type of confirmation test it is seeking. If Employer is not a certified drug-free workplace, then it is not subject to the rules governing initial screens and confirmation tests. If it is a certified drug-free workplace, we find nothing in the rules that requires an injured worker or the worker's representative to sign a medical release in order for a confirmation test to occur. In fact, a confirmation test is required by the rules whenever the initial test is positive. *See* Tenn. Comp. R. & Regs. 0800-02-12-.07(3). Employer offered no affidavit or other evidence from a representative of the laboratory currently in possession of the blood specimen indicating it would not conduct a confirmation test without a medical release or court order.

Thus, while we conclude that discovery in Tennessee is generally broad and the rules governing discovery are to be liberally construed, a party must still present evidence in support of a motion to compel sufficient to show "good cause" as to why a court order is necessary. We find nothing in the record supporting a conclusion that the trial court abused its discretion in denying Employer's motion under these circumstances.

## Conclusion

Based on the foregoing, we affirm the decision of the trial court and remand this case for any further proceedings that may be necessary.

6



**FILED**

**October 5, 2017**

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 12:57 P.M.



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Willie Guinn and Judy Guinn, as representatives of the Estate of Shannon Scott Guinn, Decedent | ) Docket No.   2017-02-0207 |
| | ) |
| | )   State File No.  97502-2016 |
| | ) |
| v. | ) |
| | ) |
| Barnard Roofing Company, Inc., et al. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 5th day of October, 2017.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Jeffery Foster | | | | | X | jfoster@morganakins.com |
| Gregory Haden | | | | | X | ghaden@hsdlaw.com |
| Brian K. Addington, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

Jeanette Baird

Jeanette Baird
Deputy Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-0064
Electronic Mail: WCAppeals.Clerk@tn.gov