IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 22, 2019 Session

FILED
06/26/2019
Clerk of the
Appellate Courts

# G. G. EX REL. JACKIE JOHNSON ET AL. V. BOYD-BUCHANAN SCHOOL ET AL.

**Interlocutory Appeal from the Chancery Court for Hamilton County**
**No. 17-0201          Jeffrey M. Atherton, Chancellor**

———————————————————

**No. E2018-01912-COA-R9-CV**

———————————————————

This interlocutory appeal involves a discovery dispute. G.G., an eighth-grade student, was expelled from Boyd-Buchanan School after he sent sexually explicit messages to a female student on a social media platform. G.G. and his mother, Jackie Johnson, filed a complaint against Boyd-Buchanan School and other school officials. The trial court dismissed most of plaintiffs' claims. The only remaining claim is plaintiffs' breach of contract claim against the school. During discovery, plaintiffs requested the employment files of various school administrators and extensive information relating to the disciplinary records of non-party students. The school filed a motion for a protective order. The court granted the school's motion in part and denied it in part. The school then requested permission to file an interlocutory appeal. The trial court granted permission to appeal, as did this Court. In this opinion, we clarify the appropriate legal standard for analyzing discovery disputes. We also hold that the trial court abused its discretion by entering an order that would allow plaintiffs to discover information that is irrelevant to their breach of contract claim. Accordingly, we reverse the judgment of the trial court and remand for the entry of an order granting Boyd-Buchanan School's motion for a protective order in its entirety.

### Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Chancery Court Reversed; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which ARNOLD B. GOLDIN, J., joined. JOHN W. MCCLARTY, filed a dissenting opinion.

Jeffrey W. Maddux, Rosemarie L. Hill, and Andrew M. W. Mutter, Chattanooga, Tennessee, for the appellant, Boyd-Buchanan School.

Charles P. Dupree, Chattanooga, Tennessee, for the appellees, G.G., by best friend and mother Jackie Johnson, and Jackie Johnson, individually.

**OPINION**

**I.**

Prior to this litigation, G.G. attended Boyd-Buchanan School, a private school in Chattanooga. In January 2017, G.G. and a female student sent sexually explicit messages to one another through a social media platform. The mother of the female student notified the principal about G.G.'s inappropriate messages. School officials investigated. Ultimately, G.G. was expelled.

Plaintiffs filed a complaint in which they alleged that defendants were liable for breach of contract, defamation, due process violations, and discrimination on the basis of race, sex, and status as a recipient of financial aid. Plaintiffs' complaint also requested the entry of a "temporary restraining order" that would allow G.G. to return to school. In April 2017, the trial court entered an order denying plaintiffs' request for a temporary restraining order, which the court construed as a request for a temporary injunction pursuant to Tenn. R. Civ. P. 65.04. The court later dismissed all of plaintiffs' claims with prejudice, except plaintiffs' breach of contract claim against the school.

The following excerpt from plaintiffs' third amended complaint represents the entirety of their breach of contract claim:

> Petitioners allege that all the Defendants, including the Board of Directors, by their actions, are guilty of Breach of Contract to educate G G [sic]. They have expelled him without cause for the expulsion (Except to alleviate the cost the financial aid to a student) and acting differently toward him based upon his minority race and gender; his mother, Jackie Johnson, will be required to obtain additional funds for school tuition, educational materials and other expenses as the result of the actions of the President and the Principal. His treatment, under current information and belief, is not in legal parity with that of other students similarly situated.
>
> These actions also are in Breach of the School Handbook, Page 20, p. [sic].

Plaintiffs appear to argue that the Middle School Handbook (the handbook) constitutes a written contract "to educate" G.G. Plaintiffs also seem to argue that the school breached this alleged contract because G.G.'s conduct did not warrant expulsion under the school's sexual harassment policy (located on page 20 of the handbook). According to plaintiffs, G.G.'s conduct did not constitute sexual harassment under that policy because his conduct did not occur "on or off school premises at [a] school-sponsored activit[y]" and

was not "unwanted or unwelcome."

During discovery, the school filed a motion for a protective order pursuant to Tenn. R. Civ. P. 26.03. Specifically, the school requested an order protecting the school from having to comply with the following discovery requests:

> INTERROGATORY NO. 5: Please list all students formally disciplined within the last three years to date, including their name, gender, age, race, Parents' name and address, all charges placed against the student, action taken and what review of the action was made, and by what officials and the results of any review for each case.
>
> INTERROGATORY NO. 7: List any students that have been expelled within the last three years to date, stating name, gender, age, race. Parents' name and address, initial charge, final charge for expulsion and factual basis for the behavior causing the expulsion. Also, please state the name, address and telephone number of all persons who investigated the charges.
>
> INTERROGATORY NO. 8: Have any students other than GG ever been expelled for violation of the school's internet usage policy? If so, state the name, gender, age, race, Parents' name and address, nature of the charges, what were the factual bases for the charges, name and address of investigating party, who directed the expulsion and when.
>
> INTERROGATORY NO. 9: Were any of the students listed in numbers 5, 7 and 8 above on financial aid to attend Boyd-Buchanan at the time of their discipline or expulsion? What was the effect of the disciplinary action on their financial aid package for the school?
>
> INTERROGATORY NO. 10: Have any of the students listed in your answer to number 7 and number 8 above been reinstated into school? If so, please state the name of the student, their race, name and address of the student's parents, and the conditions of the reinstatement, including any change in financial aid status or increase in tuition.
>
> INTERROGATORY NO. 11: Of the students listed in numbers 7 and 8 above, how many have applied for

reinstatement to Boyd-Buchanan after expulsion and not been accepted back into school? Please list name, gender, age, race, Parents' name and address, behavior that led to expulsion, and reason not re-admitted.

INTERROGATORY NO. 12: Of the students listed in number 10 above, how many have not re-entered the school after being granted reinstatement? Please name the student, gender, age, race, parents' names and address and reason not re-entered, if known.

REQUEST NO. 1: Employment application, evaluation records and notes from date of employment to present date for Principal Jennifer Warnack.

REQUEST NO. 2: Complete employment file, including evaluations, written job description and disciplinary records for Principal Jennifer Warnack from date of her employment to date.

REQUEST NO. 3: All records, e-mails, internal records, notes and written materials relating to and covering the investigations, disciplinary decisions and the discipline to be taken, including all reviews of actions done and taken for the students listed in Interrogatories 5, 7 and 8 above.

REQUEST NO. 4: All written materials, evaluations, e-mails and internal notes and/or background materials covering and dealing with all students listed in Interrogatories numbered 9, 10 and 11 above.

REQUEST NO. 5: All written materials referenced in Interrogatories numbered 3, 4 and 6 above.

REQUEST NO. 6: The employment and administrative files of Jill C. Hartness, the President of the school, with her job description.

The school argued that the information sought by plaintiffs was irrelevant to their breach of contract claim. The school also argued that "[t]he privacy interests of the non-parties weigh heavily in favor of non-disclosure."

The court entered an order granting the school's motion in part and denying it in part. The order stated that the school was not required to answer Interrogatory No. 9 or Request Nos. 1, 3, 4, and 5. As to Interrogatory No. 5, the order provided that the school was only required to disclose:

> the (a) first initial and last initial of the student; (b) age and grade level; (c) non-academic charges asserted; (d) discipline issued; (e) review engaged in; (f) by whom at Boyd-Buchanan; and (g) the results of the review for any non-academic disciplinary actions taken by Boyd-Buchanan Middle School within the prior three years (i.e. August 2014 to July 2017).

The court's order imposed these same limitations on Interrogatories Nos. 7, 8, 10, 11, and 12. The order still required the school to identify the number of students who were expelled for academic reasons. The school was also required to disclose any conditions that were required for reenrollment. Interrogatory No. 11 was limited to "students who applied for reenrollment but were denied." Interrogatory No. 12 was limited to "students who were authorized for reenrollment but choose [sic] not to do so." Request No. 2 was limited "to employment files of Jennifer Warnack that reflect policies on how the School's handbook should be enforced in regards to student discipline." Request No. 6 was limited "to employment files of Jill Hartness that reflect policies on how the School's behavioral code should be enforced in regards to student discipline."

The school requested permission to file an interlocutory appeal. The trial court determined that it was necessary to grant the school's request in order "to prevent irreparable injury," "to prevent needless, expensive, and protracted litigation," and "to develop a uniform body of law." *See* Tenn. R. App. P. 9(a). This Court likewise granted the school's motion seeking permission to file an interlocutory appeal.

## II.

The trial court certified the following issues for review:

> Whether a moving party must make a "compelling showing" of relevance and probative value to gain discovery of confidential, non-party, minor student information in the context of dispute between a former student and a private school.
>
> If not, what showing is required in such context?

Whether Plaintiffs in this case have made the required showing in a way that outweighs the privacy interests, legal obligations, and burdens at stake in compelling the production of such information.

## III.

"The applicable standard of review for pretrial discovery decisions is abuse of discretion." *West v. Schofield*, 460 S.W.3d 113, 120 (Tenn. 2015) (citing *Benton v. Snyder*, 825 S.W.2d 409, 416 (Tenn. 1992)). "An abuse of discretion occurs when the trial court applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Id.* (citing *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008)).

## IV.

## A.

We begin by clarifying the appropriate legal standard for analyzing discovery disputes. As a general rule,

[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . .

Tenn. R. Civ. P. 26.02(1). "Thus, before a trial court may order matters divulged under this Rule, it must make a threshold determination that the matters sought are (1) not privileged and (2) relevant to the subject matter of the lawsuit." *West v. Schofield*, 460 S.W.3d 113, 121 (Tenn. 2015).

The Tennessee Rules of Evidence defines "[r]elevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, "relevancy 'is more loosely construed during discovery than it is at trial.' " *Schofield*, 460 S.W.3d at 125 (quoting *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 220 n.25 (Tenn. Ct. App. 2002)). In the discovery context, "[t]he phrase 'relevant to the subject matter involved in the pending action' is synonymous with 'germane' or 'bearing on the subject matter.' " *Id.* (citations omitted). "Accordingly, before compelling discovery under Rule 26, a trial court first must determine what is included in 'the subject matter involved in the pending action.' " *Id.* (quoting Tenn. R. Civ. P. 26.02(1)).

The subject matter of a case includes all facts that "relate[ ] to the claim or defense of the party seeking discovery or to the claim or defense of any other party[.]" Tenn. R. Civ. P. 26.02(1). The subject matter of a case also includes

> a variety of fact-oriented issues may arise during litigation that are not related to the merits. . . . Nevertheless, the information sought by a plaintiff through discovery must have some logical connection to proving his case and/or obtaining his prayed-for relief.

*Schofield*, 460 S.W.3d at 125 (internal quotations and citations omitted). "It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Tenn. R. Civ. P. 26.02(1).

After addressing the threshold issues of privilege and relevance, courts must also conduct a balancing test:

> Even if a trial court determines that information sought pursuant to Rule 26 is not privileged and is relevant to the subject matter involved in the pending action, the trial court further should balance the specific need for the information against the harm that could result from disclosure of the information.
>
> Weighing the propriety of a discovery request for sensitive information involves not just determinations about privilege and relevance, but also the balancing of additional considerations, including the " 'protection of privacy, property and secret matters,' " and the " 'protection of parties or persons from annoyance, embarrassment, oppression, or undue burden or expense.' "

*Id.* at 127-28 (quoting *Johnson v. Nissan N. America, Inc.*, 146 S.W.3d 600, 605 (Tenn. Ct. App. 2004)).

In the present case, the school argues that the trial court applied an incorrect legal standard when ruling on the school's motion for a protective order. Relying on this Court's decision in *Johnson*, the school argues that plaintiffs should have been required to make a "compelling showing of relevance" in order to discover confidential information of non-party students. *See Johnson*, 146 S.W.3d at 606. Although that language does appear in *Johnson*, the Supreme Court's decision in *Schofield* clearly demonstrates that the issue of relevance is analytically distinct from the issue of privacy.

The court must "make a *threshold* determination that the matters sought are (1) not privileged and (2) relevant to the subject matter of the lawsuit." 460 S.W.3d at 121 (emphasis added). If those requirements are met, *then* the court conducts a balancing test to determine whether "the specific need for the information" outweighs "the harm that could result from disclosure of the information." *Id.* at 127-28. The court may consider the parties' privacy interests as part of that balancing test.

This resolves the first two issues certified by the trial court. Tennessee law does not require a "compelling showing of relevance" in order to discover the confidential information of non-party, minor students. Instead, a party seeking this type of information must show that the information is relevant to the subject matter of the case and not privileged. It is only necessary to consider privacy interests when those threshold requirements are met. There is no evidence that the trial court abused its discretion by applying an incorrect legal standard when ruling on the school's motion for a protective order.[1]

**B.**

The last issue certified by the trial court requires us to determine whether the court abused its discretion by entering a protective order that "reache[d] an illogical conclusion" or "employ[ed] reasoning that cause[d] an injustice" to the school. *Schofield*, 460 S.W.3d at 120 (Tenn. 2015) (citing *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008)).

As previously discussed, the court was required to determine whether the information sought by plaintiffs was "(1) not privileged and (2) relevant to the subject matter of the lawsuit." *Schofield*, 460 S.W.3d at 121. Because the school does not claim that any of the information was privileged, we focus on whether the court's protective order properly limited discovery to information "relevant to the subject matter of the lawsuit." *Id.*

In order to prevail on a breach of contract claim, a plaintiff must prove "the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011). Parol evidence is not admissible "to alter, vary, or qualify the plain meaning of an unambiguous written contract." *Smith v. Hi–Speed, Inc.*, 536 S.W.3d 458, 470 (Tenn. Ct. App. 2016) (quoting *GRW Enters., Inc. v. Davis*, 797 S.W.2d 606, 610 (Tenn. Ct. App. 1990)). On the other hand, parol evidence is admissible: (a) "to prove the existence of an independent or collateral agreement not in conflict with the written agreement"; (b) "to demonstrate supplemental, consistent terms

---

[1] Although the trial court's order does not state which legal standard it applied, we assume the court correctly applied the traditional relevance standard.

where the writing is not intended to be a complete and exclusive statement of the agreement"; (c) "to prove that a written contract does not correctly embody the parties' agreement"; and (d) to "prov[e] the existence of an agreement made after an earlier written agreement." *Id.* (citations omitted).

In this case, plaintiffs sought to discover the employment files of school administrators as well as extensive information relating to the disciplinary records of non-party students. However, plaintiffs have failed to explain why any of that parol evidence is relevant to the merits of their breach of contract claim. For example, plaintiffs do not argue that the school's sexual harassment policy – or any other provision of the handbook – is ambiguous. According to plaintiffs' complaint, "it is clear" that G.G.'s conduct does not constitute sexual harassment, as defined in the handbook. Plaintiffs also do not argue that parol evidence is necessary (a) "to prove the existence of an independent or collateral agreement not in conflict with the written agreement"; (b) "to demonstrate supplemental, consistent terms where the writing is not intended to be a complete and exclusive statement of the agreement"; (c) "to prove that a written contract does not correctly embody the parties' agreement"; or (d) to "prov[e] the existence of an agreement made after an earlier written agreement." *Smith*, 536 S.W.3d at 470 (citations omitted). In their brief, plaintiffs simply insist that discovery is "generally wide open" under Tennessee law. Plaintiffs also vaguely assert that "a pattern or lack of same can only be proven by the records in the possession of [the school.]"

Although a pattern of selective enforcement might support a discrimination claim, it is unclear what type of "pattern" would support plaintiffs' breach of contract claim. First, discovering a pattern of selective enforcement would not help plaintiffs prove that the handbook constituted a valid and enforceable contract. Second, a pattern of selective enforcement would not demonstrate that the school breached the alleged contract in this specific instance. *Cf.* ***Steinkerchner v. Provident Life & Accident Ins. Co.***, No. 01A01–9910–CH–00039, 1999 WL 734545, at *3 (Tenn. Ct. App., filed Sept. 22, 1999) (holding that an insurer's "conduct regarding the unique insurance claims of others is not relevant to whether it properly handled the claim at issue."). Third, a pattern of selective enforcement would not help plaintiffs establish the existence of damages. Finally, plaintiffs have failed to explain why discovery of such a "pattern" is "reasonably calculated to lead to the discovery of admissible evidence." *See* Tenn. R. Civ. P. 26.02(1).

The trial court's protective order did limit plaintiffs' discovery requests in certain respects. For example, the order protected the school from disclosing information relating to other students' race, sex, and financial aid status. The court correctly concluded that this information was irrelevant because the court had dismissed plaintiffs' discrimination claims. However, the protective order still required the school to disclose some employment files and information relating to the disciplinary records of non-party students. The court's order does not explain why that parol evidence is relevant to

plaintiffs' breach of contract claim or how it could lead to the discovery of other admissible evidence. For the reasons discussed above, we fail to see how any of the information requested by plaintiffs is relevant to their breach of contract claim. Accordingly, we hold that the trial court abused its discretion by entering a protective order that "reache[d] an illogical conclusion" and "employ[ed] reasoning that cause[d] an injustice" to the school. *Schofield*, 460 S.W.3d at 120 (Tenn. 2015) (citing *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008)).

Because we conclude that plaintiffs' discovery requests seek information that is not relevant to the subject matter of this case, we do not reach the question of whether plaintiffs' perceived need of the information outweighs the privacy interests of non-party students. We also express no opinion on the merits of plaintiffs' breach of contract claim.

## V.

The judgment of the trial court is reversed. The case is remanded for the entry of an order granting Boyd-Buchanan School's motion for a protective order in its entirety. Costs on appeal are taxed to the appellees, G.G., by best friend and mother Jackie Johnson, and Jackie Johnson, individually.

_____
CHARLES D. SUSANO, JR., JUDGE